This substitution-of-defendants case arose out of personal injuries sustained by Billy Joe Peek on March 1, 1978, while he was working at the Halstead-Mitchell plant in Scottsboro, Alabama.
 Case History
Plaintiffs originally sued Havir Manufacturing Company, Inc. (engineer, manufacturer, and designer of the machine being used by Mr. Peek on the occasion made the basis of this suit), Burt Gross (individually and as assistant secretary and trustee of Havir Manufacturing Co.), John O. Lenz (individually and as president of Havir Manufacturing Co.), Allen-Bradley Co. (manufacturer, engineer, and designer of electronic controls on the machine where Mr. Peek was injured), and multiple fictitiously named parties. The complaint, filed on February 28, 1979, was in two counts: Count I was brought under the Alabama Extended Manufacturer's Liability Doctrine for the employee's injuries; and Count II was brought on behalf of Mrs. Peek for the loss of her husband's services.
In Count I, Plaintiffs allege, by paragraphs two through five, specific identification of the named defendants, Havir, Gross, Lenz, and Allen-Bradley, none of whom were identified as "sellers" of the machine. In the sixth paragraph, they allege that the "corporate and individual defendants" (emphasis added) were in the business of designing, manufacturing, and selling press machines and related equipment for use on press machines of the type on which Mr. Peek was injured. Plaintiffs further allege that the Defendants did manufacture, design, engineer,sell, or otherwise put into the stream of commerce the particular machine which the employee was operating. Paragraph seven of the complaint again alleges a claim against the"defendants." (Emphasis added.) In the tenth paragraph, Peek avers that all his injuries and damages were "proximately caused by the defect as aforesaid in the finpress machine of the Defendants." (Emphasis added.)
On December 10, 1979, the Peeks, by amendment to their complaint, substituted as a party defendant Merit Machinery Company, Inc., in lieu of defendant "X", fictitiously *Page 1088 
named in the caption of the complaint as being "those persons, firms or corporations who sold, distributed or otherwise placed in the stream of commerce the press being operated by Plaintiff on the occasion made the basis of this suit."
At the time Merit filed its amended answer, pleading the statute of limitations, contributory negligence, assumption of the risk, and general denial, it also filed a motion for summary judgment based on the statute of limitations issue. From a Rule 54 (b), A.R.Civ.P., final order granting Merit's summary judgment on that issue, Plaintiffs appeal.
The issue presented is whether the Peeks properly substituted Merit Machinery Company for a fictitiously named defendant under Rule 9 (h), A.R.Civ.P., so that the substitution relates back to the filing of the original complaint under Rule 15 (c), A.R.Civ.P., and thus avoids the statute of limitations bar.
 Decision
Rule 9 (h) states:
 "When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."
Rule 15 (c) states, in part:
 "[A]n amendment pursuant to Rule 9 (h), Fictitious Parties, is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading."
In Columbia Engineering International, Ltd. v. Espey,429 So.2d 955 (Ala. 1983), this Court stated:
 "[A] plaintiff, in order to invoke the relation back principles of Rules 9 (h) and 15 (c), must meet the following criteria: 1) Plaintiff must state a cause of action against the fictitious party in the body of the original complaint; and 2) plaintiff must be ignorant of the identity of the fictitious party, in the sense of having no knowledge at the time of the filing that the later named party was in fact the party intended to be sued." 429 So.2d at 958, 959.
There is no question that the plaintiffs acquired knowledge of the true identity of the seller more than one year after the date of the accident. The ultimate issue, then, is whether the original complaint, filed within the year, states a cause of action against Merit. In our analysis of this dispositive issue, we must proceed on the premise that a cause of action under the Alabama Extended Manufacturer's Liability Doctrine may be stated in a manner quite different from a claim sounding in ordinary negligence.
Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976), and Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976), changed products liability cases in this State from the pure form of negligence theory to a modified version of theRestatement (Second) of Torts, § 402A (1965), strict liability theory, premising liability on proof that the injured ultimate user:
 "(1) . . . suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous
to the plaintiff as the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
This Court added:
 "(2) Showing these elements, the plaintiff has proved a prima facie case although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller." (Emphasis added.) Casrell, *Page 1089 
335 So.2d at 132-133; see Atkins at 141, and Restatement (Second) of Torts, § 402A (1965).
Casrell, supra, extending the doctrine of "manufacturer's liability" to include not only the manufacturer, but also the supplier and the seller, stated:
 "Under the `extended manufacturer's liability doctrine,' we opine that a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a matter of law." 335 So.2d at 132.
The Court further stated that the terms "defect[ive]" and "unreasonably dangerous" are synonymous.
In Atkins, supra, the Court stated that the gravamen of a products liability action is not the defendant's failure to exercise due care in the manufacture, design, or sale of a defective product, or in placing such a product in the commercial stream; rather, the gravamen of the action is that the defendant manufactured, or designed, or sold a defective product which, because of its unreasonably dangerous condition, injured the plaintiff or damaged his property when that product, substantially unaltered, was put to its intended use.
The Court said that a complaint substantially following theRestatement Second of Torts, § 402A, in alleging the elements of liability will withstand a motion to dismiss. "Otherwise stated, `negligence' is not an essential averment in the statement of a claim" Atkins, at 137. Therefore, the practical distinction between the Court's holding in Atkins and theRestatement is that Atkins allowed affirmative defenses not recognized by the Restatement's no-fault concept of liability.
Later, in Sears, Roebuck Company v. Haven Hills Farm, Inc.,395 So.2d 991 (Ala. 1981), this Court stated:
 "[F]ault is supplied by the defendant's selling a product in a defective condition, unlike before, when fault was shown by the careless conduct of the defendant, i.e., his failure to exercise due care in the manufacture, design, sale or placement of the product into the stream of commerce. Emphasis is now shifted from the Defendant's performance to the product's performance.
 ". . . Although this hybrid form of strict liability in products liability cases still retains vestiges endemic to the negligence cause of action, it substantially opened the way for injured ultimate users to sue the manufacturer, supplier or retailer for injuries proximately caused by a defective, unreasonably dangerous, unaltered product when put to its intended, usual and customary use." 395 So.2d at 994 (emphasis added).
Thus, to state a claim under the Alabama Extended Manufacturer's Liability Doctrine, one need not allege the "negligence" of the defendant. The plaintiff must aver that he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer.
In the caption of the case at hand, Plaintiffs name the fictitious parties as:
 "V, W, and X, being those persons, firms or corporations who sold, distributed or otherwise placed in the stream of commerce the press being operated by Plaintiff on the occasion made the basis of this suit; . . ." (Emphasis added.)
In Count I of the complaint, Plaintiffs make these averments:
 "6. That both the corporate and individual defendants
were in the business of designing, manufacturing and selling press machines, and related equipment for use on press machines of the type wherein Plaintiff was injured, and did manufacture, design, engineer, sell
or otherwise put into the stream of commerce the press machine, controls and component parts on the press machine being operated by the Plaintiff . . .
 "7. That said press, and component parts thereof, at the time of injury to the Plaintiff, was in substantially the same condition or state of repair as it was *Page 1090 
when last in the custody, care or control of the Defendants.
". . .
 "10. Plaintiff further alleges that all his said injuries and damages as aforesaid were proximately caused by the defect as aforesaid in the fin-press machine of the Defendants." (Emphasis added.)
Appellee argues in its brief that the body of the original complaint does not specifically allege any wrongdoing on the part of fictitious party "X," the seller of the machine, or Merit Machinery Company, Inc. A further argument is made that the qualifying adjectives "corporate and individual," preceding the plural noun "defendants" in paragraph six of Count I, refer to those defendants specifically named in paragraphs two through five. Moreover, Appellee claims there is no allegation that the product was sold in a defective condition, unreasonably dangerous to Plaintiff.
While Plaintiffs' complaint is not a model of pleading, we hold that, under Alabama's liberal view of notice pleading, the complaint does state a cause of action against the seller of the product. The Alabama Rules of Civil Procedure provide that a pleading shall include "a short and plain statement of the claim." A.R.Civ.P. 8 (a). With reference to this Rule, this Court has stated:
 "Any count in a complaint which would state a cause of action under our liberal notice pleading rules would also state a cause of action against a fictitious party. One need not state with more particularity a cause of action against an unknown party as compared to a named party — the test is the same." Columbia Engineering, supra, 429 So.2d 960.
In Harvell v. Ireland Electric Company, 444 So.2d 852 (Ala. 1984), the issue was:
 "Whether the use of the word `defendants' in the averments of plaintiff's original complaint is sufficient to state a legal cause of action against the fictitious parties named in the caption of the complaint as `L . . . .,' in accordance with A.R.Civ.P., Rule 9 (h), so that the amendment to the complaint naming Ireland Electric Company as a defendant will relate back to the date of filing of the original complaint in accordance with A.R.Civ.P. Rule 15 (c)." 444 So.2d at 853-854.
The Court held the complaint was sufficient. The Court further noted:
 "The caption of plaintiff's complaint names every known defendant and describes several fictitious defendants in accordance with A.R.Civ.P., Rule 9 (h). Plaintiff then proceeds to allege several causes of action against `the defendants.' From the structure of the complaint, it is obvious that plaintiff intended to, and did, assert each and every cause of action against each and every defendant, named or fictitious." 444 So.2d at 854.
Likewise, in the case at hand, the caption of the Plaintiffs' complaint names every known defendant and describes several fictitiously named defendants in accordance with A.R.Civ.P., Rule 9 (h). The Plaintiffs then use the terms "corporate and individual defendants" as well as "defendants" in the body of the complaint. Therefore, the Plaintiffs' amendment to this complaint substituting Merit Machinery Company, Inc., for "X" relates back to the filing of the original complaint by operation of A.R.Civ.P., Rule 15 (c).
Merit also argues that the Peeks were not diligent in determining the true name of Merit Machinery Company, and, therefore, that the amendment did not relate back to the filing of the original complaint by operation of Rule 15 (c). The evidence of record reflects that the first time Plaintiffs had knowledge of the true name of the seller of the machine was August 27, 1979. Thereafter, on December 10, 1979, Plaintiffs amended their complaint by substituting Merit Machinery as a defendant in place of fictitious party "X" as "that corporation who sold, distributed, or otherwise placed into the stream of commerce the press being operated by the plaintiff on the occasion made the basis of this suit."
In Denney v. Serio, 446 So.2d 7 (Ala. 1984), the plaintiff filed a complaint against a named doctor, a hospital, hospital board, *Page 1091 
and several fictitious defendants on March 5, 1980. The statute of limitations expired on March 8, 1980. The evidence of recorded tended to establish that Denney first learned Dr. Serio's name on February 25, 1982, almost two years after filing the original complaint. Denney did not formally substitute Dr. Serio for a fictitious defendant, however, until July 22, 1982. Dr. Serio offered no evidence establishing that Denney's delay in substituting him as a defendant prejudiced him. The Court held:
 "Where Dr. Serio retained counsel to defend himself against Denney's claim as early as February 25, 1982, in response to Denney's abortive attempt to add him as a party defendant, Denney's five-month delay in properly substituting him for a fictitious defendant cannot be said to have prejudiced him." 446 So.2d at 11.
Likewise, in the case at hand, the Defendant has offered no evidence establishing that the Peeks' delayed substitution in fact prejudiced it. Furthermore, once served, Merit undertook a defense on the merits. Indeed, on its original motion for summary judgment, Merit did not raise the issue of the statute of limitations.
Although this Court will not apply the relation-back principle when there has been an inordinate delay between the time the plaintiff learned the fictitious party's true identity and the actual substitution of the fictitious party's true name, we find no evidence establishing that the Peeks' delayed substitution in fact prejudiced Merit.
 Conclusion
The Peeks have alleged a cause of action under the Alabama Extended Manufacturer's Liability Doctrine in their original complaint. In the caption of the complaint, Defendant "X" was identified as the person, firm, or corporation "who sold, distributed or otherwise placed in the stream of commerce the press being operated by Plaintiff on the occasion made the basis of this suit." Furthermore, in paragraphs six, seven, and ten of Count I of the complaint, Plaintiffs, in stating their claim, make reference to the defendants. In paragraph ten of Count I, the Peeks aver that Mr. Peek's injuries and damages were proximately caused by the defect in the fin-press machine of the defendants. This is sufficient to state a cause of action under the Alabama Extended Manufacturer's Liability Doctrine.
If, for example, a plaintiff sues a defendant by its true name under the Alabama Extended Manufacturer's Liability Doctrine and alleges only that the plaintiff was injured as a result of the defendant's sale of a defective product, he has stated a legal claim against that defendant seller. Merely because a plaintiff has named a defendant fictitiously, the test of pleading is not changed so as to require more specificity that would have been necessary had the defendant been sued initially by its true name.
Furthermore, in light of Denney, supra, we hold that Merit was not prejudiced by the delay of the Peeks in amending the complaint to substitute it as a party defendant. Therefore, we reverse the summary judgment as to Merit and remand the cause for trial.
REVERSED AND REMANDED.
All the Justices concur.