OWENS–CORNING FIBERGLAS CORPORATION, Appellant,

v.

Johnnie Melvin MARTIN and Juanita Martin, James Dalmois McCarty and Vada McCarty, John Richard McCollum and Jane McCollum, Manning Mervie Mitchell, Lowell Moore and Winona Ann Moore, Ollie Lee Underwood, Sr., Robert Lorenzo Harrison, Jr. and Emogene Harrison, Lee Artis Allen, Clifton Reid and Selma Reid, Appellees.

No. 05–95–00059–CV.

Court of Appeals of Texas, Dallas.

March 14, 1997.

Rehearing Overruled April 24, 1997.

Kevin F. Risley, Gilpin Paxson & Bersch, L.L.P., Houston, for Appellant.

Brent M. Rosenthal, Janice Robinson Pennington, Baron & Budd, P.C., Dallas, for Appellees.

Before MALONEY, JAMES and MOSELEY, JJ.

## OPINION

JAMES, Justice.

Owens–Corning Fiberglas Corporation appeals a jury verdict awarding damages to

appellees for personal injury, wrongful death, and loss of consortium arising out of appellees' exposure to asbestos-containing products manufactured by Owens–Corning. Over Owens–Corning's objection, the trial court consolidated eighteen cases for trial. In three points of error, Owens–Corning asserts the trial court erred: (1) in consolidating the cases for trial; (2) by not following the Alabama unanimous verdict rule; and (3) by submitting an erroneous definition of negligence to the jury. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

The trial court originally consolidated over ninety-six asbestos personal injury cases; however, by trial only eighteen cases remained against a single defendant, Owens–Corning. Twelve of the claimants, Johnnie Martin, James McCarty, John McCollum, Manning Mitchell, Lowell Moore, Ollie Underwood, Sr., Willard Givens, Robert Harrison, Jr., Dan Green, Willie Wright, Lee Allen, and Clifton Reid, alleged injuries arising out of their on-the-job exposure to Kaylo, an asbestos-containing product manufactured by Owens–Corning. All twelve workers alleged "bystander exposure" to Kaylo, meaning they did not work with Kaylo directly, but were exposed to the Kaylo dust. Two of the workers, Givens and Green, were deceased at the time of trial. Givens died of lung cancer allegedly caused by his exposure to asbestos fibers. Green died from a medical condition unrelated to his asbestos exposure. The other six claimants, Juanita Martin, Vada McCarty, Jane McCollum, Winona Moore, Emogene Harrison, and Selma Reid, claimed damages for loss of consortium as a result of their spouses' illnesses.[1]

On the morning of trial, Owens–Corning orally objected to the consolidation of the eighteen cases for trial. Owens–Corning argued that consolidation would result in jury confusion and prejudice and would, therefore, deprive Owens–Corning of a fair trial. Owens–Corning specifically objected to the consolidation of the lung cancer death case with the noncancer cases. The trial court overruled the objection to consolidation and proceeded to hear the cases together.[2]

The trial lasted more than two weeks. Claimants Wright, Green, and Givens settled after three days of testimony. However, Mrs. Givens had previously testified about her husband's painful death from lung cancer and its effect on her life. The trial court announced that these three cases would no longer be before the jury and instructed the jury as follows:

> Now in connection with [the Wright, Green, and Givens cases], you are not to speculate as to why the cases are not before you any more, nor are you to consider any of the testimony that relates specifically to those cases in your consideration and deliberation on the remaining cases.

After the parties presented all the evidence, the trial court charged the jury on negligence and products liability. After deliberation, the jury returned a ten-to-two verdict against Owens–Corning awarding compensatory damages to the nine remaining claimants. The damage awards ranged from $50,000 to $480,000. However, the jury did not award any exemplary damages against Owens–Corning.

## CONSOLIDATION

In its first point of error, Owens–Corning contends the trial court abused its discretion in consolidating the eighteen cases for trial because (1) the cases did not share common questions of law and fact and (2) the consolidation prejudiced Owens–Corning.

### A. Standard of Review

We review the trial court's decision to consolidate under an abuse of discretion standard. *See Lone Star Ford, Inc. v. McCormick*, 838 S.W.2d 734, 737 (Tex.App.— Houston [1st Dist.] 1992, writ denied). A trial court abuses its discretion when it acts

---

1. Because the wives' loss of consortium claims are derivative of their husbands' personal injury claims, we will not discuss them separately.

2. The record shows that although the trial court heard the cases together, the judge did not sign the written consolidation order until the last day of trial.

without reference to any guiding rules or principles, or acts in an arbitrary or unreasonable manner. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex.1995); *European Crossroads' Shopping Ctr. v. Criswell*, 910 S.W.2d 45, 51 (Tex.App.—Dallas 1995, writ denied). On factual issues or other matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Criswell*, 910 S.W.2d at 51.

## B. Applicable Law

Rule 174 of the Texas Rules of Civil Procedure governs the consolidation of actions. Rule 174(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

TEX.R.CIV.P. 174(a). Rule 174 gives the trial court broad discretion to consolidate cases with common issues of law or fact. *See Lone Star Ford*, 838 S.W.2d at 737. However, if "all of the facts and circumstances of the case unquestionably require a separate trial to prevent a manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion," the trial court does not have any discretion to order consolidation. *See Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 683 (1956).

The trial court may consolidate actions that relate to substantially the same transaction, occurrence, subject matter, or question. *See Lone Star Ford*, 838 S.W.2d at 737. The actions should be so related that the evidence presented will be material, relevant, and admissible in each case. *Id.* In deciding whether to consolidate, the trial court must balance the judicial economy and convenience that may be gained by the consolidation against the risk of an unfair outcome because of prejudice or jury confusion. *See Dal–Briar Corp. v. Baskette*, 833 S.W.2d 612, 615 (Tex.App.—El Paso 1992, orig. proceeding).

Even if the cases share common questions of law and fact, an abuse of discretion may be found if the consolidation results in prejudice to the complaining party. *Lone Star Ford*, 838 S.W.2d at 738. However, we may not presume prejudice; it must be demonstrated. *Id.* Where the record does not reveal actual prejudice, the consolidation does not provide a basis for reversal. *See Hall v. Dorsey*, 596 S.W.2d 565, 569 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

## C. Common Issues of Law and Fact

Owens–Corning first asserts that the trial court abused its discretion in consolidating the twelve workers' cases for a joint trial because the cases did not present common issues of law or fact under rule 174. *See* TEX.R.CIV.P. 174(a). Owens–Corning argues that the claimants were different ages and had different diseases, occupations, types and amounts of exposure to asbestos, and medical histories. Several of the claimants had no-nasbestos-related medical conditions. Furthermore, Owens–Corning asserts that the "state of the art" liability issues differed for each claimant because each claimant was exposed to asbestos at a different time.

We agree that each claimant had a unique work and medical history; nevertheless, the twelve claims also share common issues of law and fact because they all relate to substantially the same subject matter. *See Lone Star Ford*, 838 S.W.2d at 737. All of the claimants alleged exposure to Kaylo, an asbestos-containing product manufactured by Owens–Corning; all of the claimants alleged they never saw a warning on a box of Kaylo; all of the claimants were represented by the same law firm; and all of the claims were governed by Alabama law. Of the nine worker-claimants before us, six alleged asbestosis, two alleged both asbestosis and asbestos-related pleural disease, and one alleged only asbestos-related pleural disease. Most of the claimants worked in the construction industry and alleged exposure to Kaylo in a bystander capacity. Owens–Corning was the only defendant.

Common issues of fact included the causal connection between exposure to asbestos and

disease; the varieties of disease that occur after exposure to asbestos; the amount of asbestos exposure that causes disease; and the manufacturer's knowledge about the dangers of asbestos exposure. Because the same issues of fact were raised in all of the cases, most of the expert testimony and documentary evidence introduced was relevant in each case. *See Lone Star Ford*, 838 S.W.2d at 737.

■ We find no cases in our state's jurisprudence adopting specific guidelines for determining whether to consolidate asbestos-exposure cases. However, the Second Circuit has adopted a set of standard criteria known as the *Malcolm* factors.[3] While the *Malcolm* factors are not binding on us and may not be exhaustive of the factors that should be considered in deciding whether the trial court properly consolidated a group of asbestos exposure cases, we nevertheless find them useful in structuring our analysis of the trial court's decision to consolidate these cases under rule 174(a). These criteria include: (1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged.

■ Each case presents its own unique set of facts and circumstances, which require analysis on a case-by-case basis to determine if the trial court abused its discretion in consolidating asbestos cases. Therefore, we apply the *Malcolm* factors to the facts and circumstances of this case.

### 1. Common Worksite

In this case, the plaintiffs did not all work at the same worksite. Some of the plaintiffs allege exposure to Kaylo at more than one worksite. To some degree, the divergence in worksites weighs against consolidation. However, unlike the situation in *Malcolm* where forty-eight plaintiffs' claims were consolidated, in this case, the trial court had only twelve direct claims and six derivative

claims pending when it decided to consolidate. Therefore, a consolidation of these twelve claims does not pose the same potential for confusion as a consolidation of forty-eight cases. *See In re New York Asbestos Litig.*, 149 F.R.D. 490, 496 (S.D.N.Y.1993), *aff'd sub nom. Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003 (2d Cir.1995), *vacated on other grounds sub nom. Consorti v. Owens–Corning Fiberglas Corp.*, — U.S. ——, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996).

Furthermore, the policy behind consolidating cases involving shared worksites is to simplify the proof of product identification. *See id.* In this case, because Owens–Corning is the only defendant, identity of product and market share liability is not in issue. Rather, each plaintiff had the burden to establish he was actually exposed to Owens–Corning's product Kaylo and this exposure caused his injuries. We conclude that the divergence of worksites did not pose the problems of confusion and product identification presented to the jury in *Malcolm*.

### 2. Similar Occupation

This inquiry is significant because the extent of a worker's exposure to asbestos depends mainly on his occupation. *Malcolm*, 995 F.2d at 351. This factor is relevant to the "state of the art" defense where a defendant argues that its company had some evidence that employees working directly with the material might be at risk but, at the time, there was no evidence whether workers engaged in other tasks would be at risk. *In re New York Asbestos Litig.*, 149 F.R.D. at 497. Here, the occupations of the workers are dissimilar. The occupations range from pipe fitter to brick mason to machinist to clerk. However, all of the plaintiffs allege exposure to asbestos in a bystander capacity. Only two of the plaintiffs allege some direct exposure. However, because most of the plaintiffs in this case alleged only bystander exposure, consolidation eliminated duplicative general evidence concerning exposure to as-

**3.** *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350–51 (2d Cir.1993) (adopting factors set forth in *In re All Asbestos Cases Pending in the United States District Court for the District of Maryland*, No. BML 1, slip op. at 3 (D.Md. Dec. 16, 1983) (en banc) (unreported)).

bestos in a bystander capacity. The facts and circumstances of this factor do not weigh against consolidation.

### 3. Similar Time of Exposure

This factor is also relevant to the "state of the art" liability issues because in asbestos cases, the duty to warn varies according to time. *Id.* The time when the defendant's duty to warn arises also depends upon the magnitude of scientific and medical knowledge the defendant possessed at given times during a claimant's exposure from his foreseeable use of the product. The time the duty to warn arises also depends upon the defendant's knowledge of the extent users would be exposed to asbestos particles and of the resultant diseases caused by their exposure during that foreseeable use. *Id.* Thus, we consider not only the specific times when the claimants were exposed to the product, but also the duration of their exposure in determining if these time considerations are comparable within the group of consolidated claims.

In this case, as in *Malcolm,* the plaintiffs have alleged exposures at varying times from the 1940s through the 1980s, a period covering more than four decades. However, the periods of their exposure generally overlapped and the times of their exposure were comparable. Considering all of the facts and circumstances of this case, we cannot say this factor clearly weighs against consolidation.

### 4. Type of Disease

As in *Malcolm,* not all of the plaintiffs in this case allege the same type of disease. Six alleged asbestosis, one alleged asbestos-related pleural disease, and two alleged both asbestosis and asbestos-related pleural diseases. Further, some but not all of the plaintiffs were moderate to heavy smokers. In *Malcolm,* the court considered this factor significant because, where the jury is required to hear testimony about different diseases, a significant opportunity for prejudice exists. *See Malcolm,* 995 F.2d at 351. The *Malcolm* court found the opportunity for prejudice particularly troubling when asbestosis sufferers are paired for trial with others

suffering multiple types of terminal cancers. *Id.*

Here, all of the cases finally submitted to the jury alleged only two diseases, asbestosis and asbestos-related pleural diseases. This factor does not clearly weigh against consolidation.

### 5. The Living & the Dead

In *Malcolm,* the court expressed concern about combining wrongful death claims with personal injury claims because "the dead plaintiffs may present the jury with a powerful demonstration of the fate that awaits those claimants who are still living." *Id.* at 351–52 (citing *In re Joint E. & S. Dists. Asbestos Litig.,* 125 F.R.D. 60, 65–66 (E.D.N.Y.1989)). In this case, two of the plaintiffs were deceased by the time the trial court consolidated the causes for trial. One allegedly died from asbestos-induced lung cancer; the other died of unrelated causes. Both death cases settled early in the trial, and the jury was properly instructed not to consider any of the testimony that related specifically to those cases. In the absence of evidence to the contrary, the jury is presumed to follow the trial court's instructions. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982). This factor does not clearly weigh against consolidation.

### 6. Discovery Status/Counsel

In *Malcolm,* some defendants were joined shortly before trial. They were allowed little or no participation in the discovery process. Here, all of the discovery was complete and all of the cases were ready for trial. Further, all the plaintiffs were represented by the same law firm against a single defendant. These factors clearly weigh in favor of consolidation.

### 7. Cancer

Only one plaintiff claimed to have asbestos-related lung cancer. As we have discussed above, that claim was settled early in the trial. In contrast to *Malcolm,* no other types of cancer were alleged. All of the remaining claimants alleged fear of cancer in the future as grounds for damages. Under

these facts, this factor does not weigh against consolidation.

In summary, some of the *Malcolm* factors weigh in favor of and some against consolidation in this case. Consolidation of the twelve claims resulted in considerable judicial economy, as well as avoidance of unnecessary litigation costs and attendant delay for all parties. Under all the facts and circumstances presented here, we cannot say that separate trials were required to "prevent a manifest injustice," such that the trial court was totally without discretion to consolidate under rule 174(a) of the Texas Rules of Civil Procedure. *See Womack,* 291 S.W.2d at 683. Furthermore, we cannot say that the trial court acted without reference to any guiding rules or principles or acted in an arbitrary and unreasonable manner in consolidating the cases for trial under rule 174. *See* TEX. R.CIV.P. 174(a).

### D. Actual Prejudice

■ Owens–Corning asserts it was actually prejudiced by the consolidation of the twelve claims for trial. Owens–Corning argues that the jury was so confused by the number of cases that it simply "pigeon-holed" the nine remaining claimants into four categories of damages.[4] Although Owens–Corning does not argue that the damage awards are excessive, it argues that the awards are "inconsistent" and that the jury based the awards on the order in which the claimants' names appeared on the jury form. Owens–Corning argues that the lack of individualized damage awards shows actual prejudice resulting from the consolidation. We disagree.

The jury awarded the following compensatory damages:

| PLAINTIFF | AMOUNT |
| --- | --- |
| Ollie Lee Underwood, Sr. | $480,000 |
| Clifton Reid | $480,000 |
| Lee Artis Johnson | $480,000 |
| Johnnie Melvin Martin | $200,000 |
| John Richard McCollum | $200,000 |
| Lowell Moore | $150,000 |
| James Dalmous McCarty | $150,000 |
| Manning Mervie Mitchell | $150,000 |
| Robert Lorenzo Harrison, Jr. | $ 50,000 |

■ Because the measure of damages in a personal injury case is not subject to precise mathematical calculation, each case must be measured by its own facts, and considerable latitude and discretion are vested in the jury. *See Duron v. Merritt,* 846 S.W.2d 23, 26 (Tex.App.—Corpus Christi 1992, no writ). Therefore, the question of damages, if not excessive, is properly left for the jury to determine. *Gonzales v. Southwestern Bell Tel. Co.,* 555 S.W.2d 219, 223 (Tex.Civ.App.—Corpus Christi 1977, no writ).

In support of its arguments, Owens–Corning cites *Cain v. Armstrong World Industries,* 785 F.Supp. 1448 (S.D.Ala.1992). In *Cain,* the trial court consolidated thirteen separate cases for trial. After deliberating for six hours, the jury awarded all of the noncancer personal injury claimants the same amount of damages. Likewise, the jury awarded all of the cancer personal injury claimants the same amount of damages. *See id.* at 1450. After finding the jury's damage awards were excessive, the court noted that the jury's confusion and prejudice was manifest in the identical damage awards for each different injury, the short deliberation time, and the inflated damage awards. *Id.* at 1455.

We find *Cain* distinguishable. In *Cain,* the jury awarded identical damages to each disease category. In the present cases, however, the jury awarded different amounts of compensatory damages to claimants in the same disease category. The different damage awards indicate the jury considered the actual damages suffered by each claimant. Further, Owens–Corning does not contend the jury awarded excessive damages in these cases. Therefore, we find *Cain* does not apply to the facts before us.

Because the jury has wide discretion in setting the award of damages, we disagree with Owens–Corning that any alleged lack of individualized damages, by itself, shows that the jury was prejudiced by the consolidation. There is no evidence that the jury arbitrarily categorized the claimants into groups or that

---

4. As noted earlier, the wives' claims for loss of consortium are derivative of their husbands' claims and will not be discussed separately.

Therefore, there were twelve workers' claims. Three plaintiffs settled, leaving nine claims to be submitted to the jury.

the jury was prevented from making individual decisions based on the facts of each case.

■ Second, Owens–Corning asserts the consolidation resulted in actual prejudice because the trial court included a lung cancer wrongful death case with the other personal injury cases. Owens–Corning argues that the inclusion of the cancer case establishes actual prejudice because it allowed the jury (1) to hear the full range of testimony about asbestos-related cancer and (2) to project a terminal disease on the living claimants.

Several federal courts have expressed concern over the potential for prejudice inherent in combining cancer cases with noncancer cases and wrongful death cases with personal injury cases. *See, e.g., Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir.1993) (noting prejudice could result from consolidating cancer case with noncancer cases because jury may consider evidence relevant only to cancer case in noncancer cases); *see also Malcolm*, 995 F.2d at 351 (stating that combining wrongful death cases with personal injury cases presents the jury "with a powerful demonstration of the fate that awaits those claimants who are still living"). None of these cases conclude that such consolidation is "prejudice per se;" rather, each case must be considered on its own facts to determine whether the consolidation actually resulted in prejudice. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.) (upholding consolidation of asbestosis case with wrongful death case), *cert. denied*, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).

While Owens–Corning insists that some prejudice must have resulted from the consolidation of the cancer death case and the other personal injury actions, it can point to no objective indication of such prejudice. First, Owens–Corning argues that the inclusion of the asbestos-related cancer case allowed the jury to hear "the full range" of expert testimony about cancer. However, we note that no prejudice could have resulted to Owens–Corning on this basis because risk of cancer testimony was relevant to demonstrate the other claimants' fear of asbestos-related cancer and therefore was admissible on that basis. *See Cantrell*, 999 F.2d at 1011.[5]

■ Owens–Corning next argues that actual prejudice resulted from the consolidation because the jury heard Mrs. Givens's testimony about the suffering caused by her husband's asbestos-related cancer. However, the trial court instructed the jury not to consider any of the testimony specifically relating to the cases no longer before them. In the absence of contrary evidence, we presume the jury followed the trial court's instructions. *Turner, Collie & Braden, Inc.*, 642 S.W.2d at 167. Other than Mrs. Givens's testimony, the jury heard very little about Mr. Givens's lung cancer because of the settlement early into trial.

Finally, Owens–Corning argues that the inclusion of a deceased claimant resulted in actual prejudice because it "present[ed] the jury with a powerful demonstration of the fate that awaits those claimants that are still living." Again, however, Owens–Corning cannot point to any objective evidence of actual prejudice to support its argument other than the jury awards. As noted above, the jury awarded different amounts of compensatory damages to claimants in the same disease categories. This demonstrates that the jury considered the actual damages suffered by each claimant. Furthermore, the jury did not award any exemplary damages. Lastly, testimony as to the effects of asbestos-related cancer was admissible also in the noncancer cases on the same basis and to the same extent that testimony concerning the risks of cancer was relevant to the other claimants' fear of asbestos-related cancer.

Based on the specific facts of this case, we conclude Owens–Corning has not demonstrated the cases were improperly consolidated or it suffered actual prejudice as a result of the consolidation. We overrule Owens–Corning's first point of error.

---

**5.** Owens–Corning does not challenge on appeal whether fear of cancer damages are recoverable under Alabama law. In absence of a challenge, we presume these damages are recoverable under Alabama law. We express no opinion on whether fear of cancer damages are recoverable under Texas law.

## ALABAMA UNANIMOUS VERDICT RULE

In its second point of error, Owens–Corning asserts the trial court erred in entering judgment on a split jury verdict. Owens–Corning argues that, because this case is governed by Alabama substantive law, the trial court erred by refusing to apply Alabama's unanimous verdict rule.

### A. Applicable Law

■ Under Texas choice of law rules, Texas courts apply the substantive law of the state having the most significant relationship to the litigation. *Gutierrez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979). Matters of remedy and procedure, however, are governed by the law of the forum where the suit is maintained. TEX.CIV.PRAC. & REM.CODE ANN. § 71.031(b) (Vernon 1986); *Penny v. Powell,* 162 Tex. 497, 499, 347 S.W.2d 601, 602 (1961); *Vartanian Family Trust No. 1 v. Galstian Family Trust,* 724 S.W.2d 126, 128 (Tex.App.—Dallas 1987, no writ); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122 (1971).

■ If the Texas Supreme Court considers a matter procedural by formulating a procedural rule relating to that matter, we should not construe another state's rule covering the same matter as substantive. *See Penny,* 347 S.W.2d at 603. Furthermore, to determine whether a statute is procedural or substantive, we apply Texas rules of construction. *See id.* at 602.

Rule 292 of the Texas Rules of Civil Procedure provides "[a] verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten members of an original jury of twelve." TEX. R.CIV.P. 292. However, Alabama law requires a unanimous jury verdict. *See Gilbreath v. Wallace,* 292 Ala. 267, 292 So.2d 651 (1974).

### B. Application of the Law to the Facts

■ The parties do not dispute that Alabama substantive law governs these cases. Accordingly, Owens–Corning argues that the trial court erred in applying rule 292 rather than the Alabama unanimous jury verdict rule. Owens–Corning argues that, under Alabama law, the unanimous verdict rule is of constitutional magnitude; therefore, it is a substantive rule of law in that state and affects the outcome of the trial by establishing the "quantum of persuasion" a claimant must meet to recover. We disagree.

The number of jurors required to reach a verdict clearly relates to the method of trial. The method by which a court tries a case is a matter of procedure. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 129 (1969) (providing local law of the forum determines whether a party is entitled to jury trial on any aspect of the case). Furthermore, the Texas Supreme Court treated the issue as procedural by promulgating a procedural rule regarding the number of jurors required to render a verdict. *See* TEX.R.CIV.P. 292; *see also Penny,* 347 S.W.2d at 603.

Because the number of jurors required to reach a verdict is clearly a procedural matter in Texas, we conclude that the trial court correctly applied Texas law by entering a judgment on the jury's ten-to-two verdict. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.031(b) (Vernon 1986); *see also Penny,* 347 S.W.2d at 603. We overrule Owens–Corning's second point of error.

## JURY CHARGE

In its third point of error, Owens–Corning argues that the trial court erred in submitting an erroneous definition of negligence in the jury charge. Owens–Corning asserts that the instruction was defective because it (1) misstated Alabama negligence law and (2) constituted an improper comment on the weight of the evidence.

### A. Applicable Law

■ In all jury cases, the trial court shall submit such instructions and definitions to properly allow the jury to reach a verdict. *See* TEX.R.CIV.P. 277. The court shall submit questions, instructions, and definitions raised by the evidence. TEX.R.CIV.P. 278. For an instruction to be proper, it must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence. *Criswell,* 910 S.W.2d at 53. An

instruction that misstates the law or misleads the jury is improper. *Id.* at 54.

However, a trial court has broad discretion in submitting jury instructions. *See Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex.1995); *Criswell,* 910 S.W.2d at 54. The trial court does not abuse its discretion unless the complaining party can show that the instruction amounted to such a denial of the complaining party's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1); *Island Recreational Dev. Corp. v. Republic of Tex. Savs. Assoc.,* 710 S.W.2d 551, 555 (Tex. 1986). To determine whether an improper jury charge constitutes reversible error, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp.,* 710 S.W.2d at 555. Generally, error in the submission of an issue is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980); *Keene Corp. v. Kirk,* 870 S.W.2d 573, 580 (Tex. App.—Dallas 1993, no writ).

### B. Application of the Law to the Facts

Owens–Corning argues that the instruction on negligence submitted by the trial court was erroneous because it (1) included duties not recognized under Alabama law and (2) constituted an improper comment on the weight of the evidence.

The trial court submitted the case to the jury on two theories of liability: common-law negligence and products liability under the Alabama Extended Manufacturer's Liability Doctrine. The trial court's charge on negligence provided:

> Was the negligence, if any, of the defendant Owens[-] Corning Fiberglas with respect to the plaintiffs listed below a proximate cause of an asbestos-related injury to those plaintiffs?
>
> "NEGLIGENCE" means the failure to discharge or perform a legal duty owed to the other party. Under the law, the following duties apply to this case:

> 1. The duty owed by the defendant to the plaintiffs was to exercise reasonable care not to injure or damage the plaintiffs, that is, to exercise such care as a reasonably prudent person would have exercised under the same or similar circumstances.
>
> 2. A manufacturer is negligent who designs and/or places on the market a product that the manufacturer could have reasonably anticipated would become inherently or imminently dangerous to human life or health when put to its intended, ordinary, and customary use and which became inherently or imminently dangerous to human life or health when put to its intended, ordinary, and customary use.
>
> 3. A manufacturer of a product which may be reasonably anticipated to be dangerous, if used in a way in which the manufacturer should reasonably foresee the product would be used, is negligent for the failure to exercise reasonable care to give reasonable and adequate warnings of any dangers known to the manufacturer, or which in the exercise of reasonable care, the manufacturer should have known and which the person exposed to the product obviously could not discover.
>
> "REASONABLE CARE" means that degree of care which would be used by a person or corporation of ordinary prudence under the same or similar circumstances.

Under Alabama law, negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something which a reasonably prudent person would not have done under the same or similar circumstances. *Elba Wood Prod., Inc. v. Brackin,* 356 So.2d 119, 122 (Ala. 1978).

Alabama law also provides a special version of product liability law known as the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). *See Peek v. Merit Mach. Co.,* 456 So.2d 1086, 1089 (Ala.1984). The AEMLD is a hybrid form of strict products liability. *See Sears, Roebuck & Co. v. Haven Hills Farm, Inc.,* 395 So.2d 991, 993–94 (Ala.1981). To establish liability under

the AEMLD, the plaintiff must show that he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer. *Peek,* 456 So.2d at 1089. Claims under the AEMLD and claims in negligence are separate and distinct causes of action. *See id.*

The second and third duties imposed by the court in the negligence instruction do not arise under common-law negligence, but arise under the AEMLD. We conclude that the trial court incorrectly included elements of the AEMLD in its negligence instruction.

 We must now determine whether the incorrect negligence instruction harmed Owens–Corning. We will reverse only when, under the circumstances of the case, including the charge as a whole and the statements and arguments of counsel, the error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *See* Tex.R.App.P. 81(b)(1); *Island Recreational Dev. Corp.,* 710 S.W.2d at 555.

Owens–Corning argues that it was harmed because the jury's consideration of the AEMLD question was conditioned on an affirmative answer to the negligence question. Owens–Corning argues that if the jury had found in favor of Owens–Corning on negligence, the jury would not have reached the AEMLD question. According to Owens–Corning, the erroneous negligence question "permeated" the rest of the jury's verdict and therefore probably caused the rendition of an improper judgment. We disagree.

As noted earlier, claims under the AEMLD and claims in negligence are separate and distinct causes of action. *See Peek,* 456 So.2d at 1089. Therefore, the trial court should not have conditioned the AEMLD question on an affirmative answer to the negligence question.[6] *See Varme v. Gordon,* 881 S.W.2d 877, 881 (Tex.App.—Houston [14th Dist.] 1994, writ denied). However, the improper conditional submission would have harmed the plaintiffs, not the defendant, because it could preclude the jury's consideration of their alternative ground of recovery.

The jury found in favor of appellees on the AEMLD, an independent ground for recovery; therefore, any error in the submission of the negligence question was harmless under the facts of this case. *See Boatland of Houston, Inc.,* 609 S.W.2d at 750. We overrule Owens–Corning's third point of error.

We affirm the trial court's judgment.

---

6. We note that neither party objected to the improper conditioning instruction.