Norma L. KIEFER, Robert Kiefer, and
Mills, Shirley, Eckel & Bassett,
L.L.P., Appellants,

v.

CONTINENTAL AIRLINES,
INC., Appellee.

No. 14–98–00113–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 28, 1999.

George Vie, III, Galveston, for appellants.

Winston D. Carter, Jr., Richard B. Stilwell, Reagan M. Brown, Houston, for appellee.

Panel consists of Justices YATES, LEE, and DRAUGHN.[1]

### OPINION

JOE L. DRAUGHN, Justice (Assigned).

Robert and Norma Kiefer appeal from a take-nothing judgment granted Continental Airlines, Inc., in their personal injury suit. Mills, Shirley, Eckel & Bassett, L.L.P., the law firm representing the Kiefers, appeals from the trial court's imposition of certain sanctions. We affirm.

### I. Background

The Kiefers sought damages for injuries Norma Kiefer suffered after an attaché case fell on her head from an overhead luggage bin during flight. Continental originally was granted summary judgment on grounds that the Federal Aviation Act preempted the Kiefers' personal injury claims. The Kiefers appealed to the First Court of Appeals, which reversed and remanded for trial. Continental appealed to the Supreme Court, which affirmed the appellate court's decision and remanded the cause for trial. *See Kiefer v. Continental Airlines, Inc.*, 882 S.W.2d 496 (Tex. App.—Houston [1st Dist.] 1994), *aff'd,* 920 S.W.2d 274 (Tex.1996). Jurors found that Continental was not negligent, and the court entered a take-nothing judgment in Continental's favor.

The Kiefers moved for a new trial, in part on grounds that one of the jurors was

1. Senior Justices Joe L. Draughn and Norman Lee sitting by assignment.

disqualified. At the hearing on the motion for new trial, the trial court sustained Continental's objection to the Kiefers' asking certain questions of a juror. The trial court on its own motion ordered the Kiefers' law firm, Mills, Shirley, Eckel & Bassett, L.L.P., to pay $150 to each of two juror-witnesses to compensate each juror for the inconvenience of attending the hearing.

## II. Discussion

### A. Jury charge

■ In their first appellate issue, the Kiefers complain of the jury charge. They asked the trial court to submit a negligence question premised on a high decree of care. Continental, on the other hand, requested a negligence question premised on ordinary care. Each objected to the other's question. The trial court said that after the Supreme Court's *Continental Airlines* decision it was unsure of the level of care required. The trial judge in the interest of judicial economy submitted both negligence questions rather than risk choosing the incorrect level of care and having to retry the case with a different level after reversal. The Kiefers complain the trial court abused its discretion by submitting two independent negligence questions and definitions.

■ A trial court has great discretion in submitting jury questions. *See Rendleman v. Clarke,* 909 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1995, writ denied). It has even greater discretion in submitting instructions and definitions. *See Lone Star Ford, Inc. v. McCormick,* 838 S.W.2d 734, 739 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Generally a court must whenever feasible submit a cause upon broad-form submissions. *See* Tex.R.Civ.P. 277. We may not reverse a judgment on grounds the trial court erred unless we conclude the error probably caused the rendition of an improper judgment. *See* Tex.R.App.P. 44.1(a)(1). To determine whether an improper jury charge

constitutes reversible error, we must consider the pleadings, the evidence, and the charge in its entirety. *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 722 (Tex.App.—Dallas 1997, no writ). Generally, error in the submission of an issue is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980); *Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d at 722.

We have found no case exactly on point. The Supreme Court in *Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 n. 6 (Tex.1992), said that Rule 277 is not absolute. There, the court dealt with a reverse condemnation proceeding. The landowner sought recovery on negligence grounds. The Supreme Court said it would not reverse and remand in the interest of justice to allow the plaintiff to seek recovery on bad-faith grounds. The court said no Texas court had recognized a bad-faith cause in a reverse condemnation proceeding and the plaintiff could seek recovery on such grounds only by arguing for an extension of state law. The court then said, "Submitting alternative liability standards when the governing law is unsettled might very well be a situation where broad-form submission is not feasible." *Id.* Continental argues that this allows the trial court to submit negligence questions with different standards of care when the governing law is unsettled.

In its earlier review of this case, the Supreme Court held that a common-law negligence action does not impinge upon federal airline regulation to such an extent as to be preempted by federal law. *See Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d at 282. The court pointed out, however, that other tort actions or the imposition of punitive damages might constitute impermissible state interference with the federal regulatory scheme. *See*

*id.* at 282–83. The trial court apparently interpreted this language as possibly prohibiting a negligence suit with a higher standard than ordinary care. The trial court, therefore, submitted both standards to the jury.

The questions and accompanying definitions were as follows:

[Question No.1]

Did the negligence, if any, of Continental Airlines proximately cause the occurrence in question?

. . . .

"High degree of care" means that degree of care that would be used by a very cautious, competent, and prudent person under the same or similar circumstances.

. . . .

[Question No. 2]

Did the negligence, if any, of Continental Airlines proximately cause the occurrence in question?

. . . .

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

In view of the jury's negative answers to both questions, the Kiefers fail to raise an issue constituting reversible error. The Kiefers requested and received a negligence question with a high-degree-of-care standard. They argue the additional negligence question relying on ordinary care led to jury confusion because the attorneys were forced to argue two separate standards. They fail to demonstrate how this could lead to confusion, however. Lawyers frequently argue alternative theories of liability to juries. We do not see how two separate and independent standards of care would be more confusing. The jurors had both questions before them and answered "no" to each.

The Kiefers also assert that the definition misstates the law and, thus, constitutes reversible error. Both standards cannot be correct, they say. Therefore, the definitions constitute reversible error. We disagree. In view of the jury's negative answer to both questions, we need not reach the issue as to which definition is correct. The jury found that the defendant was not negligent under either. Any error, under these circumstances, is harmless. Had the jury answered either one or both negligence questions affirmatively, we would have to address the issue if it were properly raised. The plaintiffs had two alternative standards of negligence by which to persuade the jury, one with a lesser burden of proof than the other. They failed to convince the jury of either. We find no reversible error and overrule their first appellate issue.

**B. Juror bias**

In their second appellate issue the Kiefers complain the trial court erred in failing to strike juror No. 30 for cause.

First, we must determine whether the Kiefers preserved their complaint. To preserve a complaint about an objectionable juror for appellate review, the objecting party must before exercising its peremptory challenges tell the trial court that the party will exhaust its peremptory challenges and that after exercising its challenges, specific objectionable jurors would remain on the jury list. *See Hallett v. Houston Northwest Med. Ctr.*, 689 S.W.2d 888, 890 (Tex.1985).

The Kiefers after general voir dire asked the court to recall sixteen jurors, including No. 30, for further questioning, saying that the venire members had shown bias. The court said, "[Y]ou are free to move to strike all 16 for cause and I'll overrule that cause strike." The court then allowed the Kiefers to call up five venire members for additional questioning. The Kiefers called up the five, and the court struck the five for cause. The Kiefers then asked the court for permission to recall the remainder of the sixteen. The court refused. The Kiefers then exercised their peremptory strikes on several venire

members, leaving several objectionable members on the jury panel. The Kiefers then asked the court for additional strikes to remove the remaining objectionable jurors, including No. 30. The Kiefers in making their request said that they had previously asked the court to strike the venire members for cause and that the court refused. The court refused their request for additional peremptory strikes. The Kiefers preserved their complaint about juror No. 30.

 Whether a panel member is biased or prejudiced is a question of fact. *See Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex.1963). If evidence shows that a prospective juror has a state of mind in favor of or against a litigant so that the juror is not able to act impartially and without prejudice, the juror is disqualified as a matter of law. *See Gum v. Schaefer,* 683 S.W.2d 803, 807 (Tex.App.— Corpus Christi 1984, no writ). Where the evidence is not conclusive as a matter of law, we must examine the evidence in the light most favorable to the trial court's ruling. *See id.* We review a trial court's decision regarding challenges for cause for an abuse of discretion. *See Guerra v. Wal–Mart Stores, Inc.,* 943 S.W.2d 56, 59 (Tex.App.—San Antonio 1997, writ denied). *See generally* W. Wendell Hall, *Standards of Review in Texas,* 29 St. Mary's L.J. 351, 434 (1998). Bias is an inclination toward one side of an issue rather than the other. Before the trial court must disqualify a juror, the court must find that the juror's state of mind leads to the natural inference that the juror will not act impartially. *See Goode .v. Shoukfeh,* 943 S.W.2d 441, 453 (Tex. 1997) (citing *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963)).

During voir dire, No. 30 responded to questioning as follows:

[KIEFERS' COUNSEL]: How do you feel about personal injury lawsuits?

[NO. 30]: I agree with most—well, some of the people who have said that there is an abuse of the system. You see the ads on TV and it's hard to know when they are justified. I've never had any personal contact with [a] personal injury case, so I don't know for sure. As far as pain and suffering, I'd have a difficult time awarding that because of the excess that has been awarded, I think.

[KIEFERS' COUNSEL]: From what you've heard in the past then, when it came to an issue of pain and suffering, would you be more inclined to give the benefit of the doubt to Continental?

[NO. 30]: Probably.

When Continental's attorneys later asked venire members whether any would not be able to follow the judge's instructions, No. 30 did not respond.

The Kiefers rely on *Shepherd v. Ledford,* 962 S.W.2d 28, 34 (Tex.1998). There, however, the venire member in a medical malpractice case said that because of some experience his father had with doctors he would put the plaintiff "ahead of the defense." Here, No. 30 merely agreed with a statement from the Kiefers' attorney that she would be more inclined to give the benefit of the doubt to Continental. The court during the hearing on the motion for a new trial noted that the Kiefers had to prove their case by a preponderance of the evidence. The court viewed the panel member's statement as an approximation of the proper burden; that is, if all things were equal, the defense was supposed to win. Moreover, the court said, the jurors found no negligence and thus never reached the pain-and-suffering question.

Panel member No. 30 was not biased or prejudiced as a matter of law. Her answers indicated that she would be able to follow the court's instructions. The trial judge was in a better position to view her demeanor. Also, the bias allegation relates to pain and suffering not to negligence. The trial court did not err in failing to remove juror No. 30 for cause. We overrule the Kiefers' second appellate issue.

### C. Incorrect voir dire response

■ The Kiefers complain in their third appellate issue that a venire member failed to answer voir dire questions truthfully and that this lack of candor was harmful.

■ If a juror gives an erroneous or incorrect answer to a question on voir dire, the trial court may grant a new trial if the voir dire answer is material and injured the moving party. *See* TEX. R.CIV.P. 327.a. A venire person's failure to disclose information about which she had no knowledge or had forgotten at the time of voir dire does not constitute concealment. *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 851 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). To establish jury misconduct on grounds that the venire person concealed information during voir dire, a party must obtain proof of concealment from a source other than jury deliberations. *See Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 272 (Tex. App.—El Paso 1994, writ denied); *Soliz v. Saenz*, 779 S.W.2d 929, 933 (Tex.App.—Corpus Christi 1989, writ denied).

The Kiefers moved for a new trial on grounds that juror Sally A. Barber knew Continental flight attendant Sheila Hammond, a witness. They argued that when during voir dire the Kiefers' attorney introduced Hammond to the panel members and asked members whether any of them knew Hammond, Barber remained silent. Attached to the motion was an affidavit signed by juror Lillian Harris in which she averred that an unidentified female juror—an "older white non-Asian female"—had told Harris that the juror knew Hammond and that the jurors determined that they would not tell the court or the parties that this juror knew Hammond.

Continental filed a response to the Kiefers' new-trial motion. It attached to its response an affidavit signed by Barber in which she averred that before trial she did not know Hammond and that the possibility of her having seen Hammond in public did not influence her or have an influence on her verdict.

At the hearing on the motion for new trial, Barber testified that she might have seen Hammond in public, perhaps on a flight, at the airport, or elsewhere. Barber testified that she realized this during trial. The trial court prevented Barber from testifying about what she said to other jurors and whether any independent knowledge influenced her decision.

The evidence does not show that Barber was untruthful at voir dire. The evidence shows Barber answered truthfully at voir dire that she did not know Hammond. Her later realization that she may have seen Hammond in public or on the job did not make her voir dire answer incorrect. This situation does not rise to the level of jury misconduct as envisioned by Rule 327.a. *See* TEX.R.CIV.P. 327.a; *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d at 851.

■ The Kiefers' also complain the trial court impermissibly limited their examination of Barber at the hearing. We disagree. Barber testified under questioning by the Kiefers' attorney that she had signed an affidavit averring that she had seen Hammond in public. She further testified that she might have seen Hammond on a flight or at the airport and that she may have seen Hammond perform her job as a flight attendant. She said she came to this realization some time during the trial. She said that she had no recollection about her having an opinion about Hammond's work based on personal observation but that flight attendants "in general do a good job."

The trial court prevented the attorney from questioning Barber about what she told other jurors and about whether her personal knowledge of Hammond had influenced her vote.

The rules generally prevent jurors from testifying about jury deliberations. *See* TEX.R.CIV.P. 327.b; TEX.R.EVID. 606(b). The attorneys and the court can gather information about the truthfulness of a

juror's voir dire answers without questioning the juror about deliberations. The attorney, in fact, did so here. The Kiefers apparently wanted to question Barber about what she may have told other jurors about her independent knowledge of Hammond. The rules prohibit this kind of questioning so long as the information does not deal with outside influences. *See* Tex.R.Civ.P. 327.b; *Robinson Elec. Supply v. Cadillac Cable Corp.,* 706 S.W.2d 130, 132–33 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). *Also see id.* at 134 (Draughn, J., concurring) (Texas rules inadequate; they do not allow court to inquire into whether inappropriate and impermissible jury discussion influenced decision).

■ The Kiefers also complain the trial judge prevented them from making an offer of proof to preserve error. The trial judge prevented the juror from answering what it considered to be improper questions. The court did not prevent the Kiefers from asking questions. Indeed, the Kiefers asked several questions that the trial court prevented the juror from answering. The Kiefers preserved their error with respect to the questions. The judge did not prevent them from tendering additional questions to help the judge and the reviewing court determine whether the questions ventured into prohibited territory.

Be that as it may, the Kiefers' complaint is that Barber answered a voir dire question untruthfully. We disagree. We overrule their third appellate issue.

### D. Sanctions

■ Appellant Mills, Shirley, Eckel & Bassett, L.L.P., the law firm representing the Kiefers, complains the trial court abused its discretion by sanctioning the firm $300 for calling two witnesses to the new-trial motion hearing. The court acted without notice, the firm says.

The firm called two juror-witnesses, Barber and Harris, for the hearing on the motion for a new trial. The court prevented Barber from testifying about what she may have told jurors and prevented her from testifying whether any independent knowledge of the flight attendant influenced her vote. The attorneys, noting that the trial court refused to let Barber testify about these subjects, did not call Harris. The trial court said that calling the two witnesses to appear was improper and sua sponte ordered the firm to pay each witness $150 for her inconvenience. Mills, Shirley complied with the trial court's order.

■ A trial court has inherent power to impose sanctions on its own motion. *In re Bennett,* 960 S.W.2d 35, 40 (Tex. 1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998). We review the trial court's decision under an abuse of discretion standard. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990). In exercising discretion by ordering sanctions, a trial court is limited by the Due Process Clause of the United States Constitution. *In re Bennett,* 960 S.W.2d at 40. Where an attorney fails to complain of the sanction and fails to ask the trial court to reconsider its actions, however, the attorney waives any complaint about the trial court's action. *See* Tex.R.App.P. 33.1(a)(1); *Valdez v. Valdez,* 930 S.W.2d 725, 728 (Tex.App.—Houston [1st Dist.] 1996, no writ).

Mills, Shirley complied with the trial court's order and failed to complain or ask the judge to reconsider on grounds of lack of notice. The trial court had no opportunity to correct any error it may have perceived. Appellant Mills, Shirley failed to preserve its complaint for appellate review. We overrule its fourth appellate issue.

### E. Factual sufficiency

■ In their fifth appellate issue, the Kiefers complain the verdict is against the great weight and preponderance of the evidence.

When a party with the burden of proof at trial complains of the factual sufficiency of the evidence, we weigh all the evidence and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). We may not reverse and remand if we conclude simply the evidence preponderates toward an affirmative answer. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). We may reverse only when the great weight of the evidence supports an affirmative answer. *See id.*

Norma Kiefer was flying from Pittsburgh to Houston. During the flight, Hammond, a flight attendant, opened an overhead bin. One witness said Hammond opened the bin to retrieve an attaché case a passenger had requested. Another witness said the attendant opened the bin to get a pillow for a passenger. An attaché case fell from the bin and struck Norma Kiefer on the head.

As a result of her injuries, Norma Kiefer said, she suffered from neck pain and was unable to travel with her husband or to work in their business. Dr. John Jones testified that within reasonable medical probability, Norma Kiefer's neck pain was caused by the falling attaché case. Dr. Andrew Levine, an orthopedic surgeon, testified that within reasonable medical probability Norma Kiefer's cervical fusion was caused by the falling case.

Hammond, who had been with Continental many years, told the jurors she used an "extreme high level of caution" in her job performance. She agreed that a "high degree of caution" would include making sure the overhead bins were closed before takeoff but that she might not know the bin contents or whether the bin was overloaded. She said she exercised a high degree of care when the case fell on Norma Kiefer. Hammond said that to open an overhead bin she would use one hand to operate the latch mechanism and the other to monitor the rate of speed of the door

opening. She had no specific memory of the event but said she could not have opened the bin another way.

She testified that the airline's service standard bulletin said the stowage of carry-on items is one of an attendant's safety responsibilities and that the bulletin said that briefcases and other items that could injure passengers should be placed at the bottom of the overhead bin. The attendants were to monitor overloading.

She acknowledged that the attaché case was not stored at the bottom. She agreed that she did not see the bin being closed. She further testified that some airline training department material specifically referred to a lawsuit against another carrier in which a passenger was injured by a falling briefcase.

Continental's flight training expert testified that a flight attendant could prevent an item from falling by opening a bin slowly. Hammond, nevertheless, testified she did everything she could to avoid the accident.

Hammond testified she used a high degree of care and described her procedure for opening an overhead bin in flight, even though she said had no specific recollection of the incident. She testified about her training and about the airline's rules for and her responsibilities with respect to overhead bin loading. She testified that she did not close each bin but that passengers sometimes closed bins. Thus she was not able to inspect the loading or contents of each bin.

The jurors were able to assess the degree of care the flight attendant used and the degree of care the airline exercised through the attendant and its rules. The great weight of the evidence does not support an affirmative answer under either the ordinary negligence standard or under the higher-care standard. We overrule the Kiefers' fifth appellate issue.

### III. Conclusion

We overrule the appellants' five issues and affirm the trial court's judgment.