

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-09-098-CV

REZA VAFAIYAN                                                      APPELLANT

V.

THE STATE OF TEXAS                                                  APPELLEE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Reza Vafaiyan, appearing pro se, appeals the trial court's order granting Appellee The State of Texas's motion for summary judgment for forfeiture of United States currency totaling $381, 244.75; a 2000 Pontiac Grand Am; a 2001 Ford pickup truck; and the proceeds from the sale of the real

---

[1]See Tex. R. App. P. 47.4.

property located at 2900 Kyle Cove in Wichita Falls. In seventeen issues,[2] Vafaiyan argues that the trial court abused its discretion by ordering that the preceding list of items be forfeited to the State, by denying his motion to recuse Judge Price, by denying his motion for a hearing on his motion challenging the seizure of his home, by granting the State's motion to sell his home, by failing to make findings of fact and conclusions of law, by consolidating the five forfeiture cases, by denying his motion for continuance, by sustaining the State's objections to his supplemental response, by granting the State's motion for summary judgment, and by denying his motion for reconsideration. We will affirm.

## II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND[3]

According to the State's motion for summary judgment, "[f]or a period of at least four years, Reza Vafaiyan . . . plagued the Wichita Falls, Texas, community by supplying individuals with a capacious amount of chemicals used in the illegal manufacture of methamphetamine." In April 2004, the State filed a notice of seizure and intended forfeiture of United States currency totaling $2,452.00. Thereafter, the State filed four additional cases involving additional currency,

---

[2]Vafaiyan's issues include one through sixteen, as well as a separate issue that he lists as "15A."

[3]Most of the arguments that Vafaiyan raises concern rulings on motions that he filed. To avoid duplicity, we do not detail all of the motions that Vafaiyan filed and the rulings thereon in this background section but instead discuss them below under their respective headings.

2

vehicles, and Vafaiyan's house.[4]  In August 2008, the State filed a motion to consolidate all five of the forfeiture cases that were pending against Vafaiyan and filed a consolidated motion for summary judgment on all of the cases.  Vafaiyan filed a pro se response, claiming that he was representing himself in the forfeiture case involving his house, and his attorney filed a response for all of the forfeiture cases, including the forfeiture case involving Vafaiyan's house.[5]  The State thereafter filed a motion objecting to improper summary judgment evidence included in the summary judgment responses.  The trial court sustained the State's objections and granted the State's motion for summary judgment, ordering a final judgment of forfeiture in favor of the State of Texas as to the $2,452.00 in United States currency; the $200,382.62 in United States currency; the $178,410.13 in United States currency; the 2000 Red Pontiac Four Door; the 2001 Maroon Ford F-150 Pick-up; and the proceeds from the sale of the real property located at 2900 Kyle Cove.

Following the trial court's final judgment on forfeiture, Vafaiyan filed a motion for reconsideration, rehearing, and new trial, as well as an amended

[4]The State also brought a criminal case against Vafaiyan for first-degree money laundering.  In March 2006, a jury convicted Vafaiyan of first-degree money laundering, and he received a life sentence.  Vafaiyan appealed, and we affirmed the conviction.  *See Vafaiyan v. State*, 279 S.W.3d 374, 391 (Tex. App.––Fort Worth 2008, pet. ref'd).

[5]The record before us does not contain a ruling on Vafaiyan's motion to remain pro se on his house case, which was filed on December 18, 2008.  However, Vafaiyan later filed a motion to dismiss his attorney, and his attorney filed a motion to withdraw.  On February 10, 2009, the trial court granted Vafaiyan's attorney's motion to withdraw.

motion for reconsideration and new trial. The trial court denied these motions, and this appeal followed.

### III. Standard of Review

Because a majority of the issues that Vafaiyan raises are reviewed under an abuse of discretion standard, we set forth that standard here. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

### IV. MOTION TO RECUSE WAS MOOT AND BIAS WAS NOT SHOWN

In his first issue, Vafaiyan argues that the trial court abused its discretion by denying his motion to recuse Judge Mark Price from presiding on the

4

forfeiture case involving Vafaiyan's house. Specifically, Vafaiyan argues that Judge Price "served as a lawyer with [the] City Attorney in the matter in controversy and his association with City Att. who 'threatened me out of city broke.'" In his third issue, Vafaiyan argues that the trial court abused its discretion by denying his motion to sanction the district attorney for fraud, his motion to dismiss, his motion to stay, and his motion to lease his house. Vafaiyan claims that the denial of his motions proves that Judge Price was biased in favor of the State.[6] Because both of these issues relate to Vafaiyan's arguments regarding Judge Price, we will analyze them together.

The denial of a motion to recuse is reviewed under an abuse of discretion standard on appeal. *See* Tex. R. Civ. P. 18a(f). The Texas Supreme Court has stated,

> '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)). Furthermore, expressions of impatience, dissatisfaction, annoyance, and even anger do not

---

[6]Although we are unable to locate in the record before us or on the Wichita County Civil Case Summary sheet any motion to lease house and any order denying such motion, we will, in the interest of justice, presume that such motion was filed and that an order exists denying it.

establish bias or partiality. *Id.* at 240. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* (quoting *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1147).

Here, the record reflects that although Judge Price was initially assigned to the forfeiture case relating to Vafaiyan's house on Kyle Cove, the State filed a motion to consolidate all of the forfeiture cases, and Judge Brotherton presided over the forfeiture cases after they were consolidated. Because Judge Price did not preside over Vafaiyan's forfeiture cases, we hold that Vafaiyan's issue relating to his motion to recuse Judge Price is moot. *See Bailey v. State*, No. 03-09-00276-CR, 2010 WL 2428085, at *2 (Tex. App.—Austin June 18, 2010, pet. filed) (mem. op., not designated for publication) (holding that appellant's motion to recuse became moot when his trial was conducted by a visiting judge, rather than the judge appellant sought to recuse). We therefore overrule Vafaiyan's first issue. Moreover, because judicial rulings alone do not constitute a basis for a bias, we hold that Judge Price's rulings on Vafaiyan's motions do not constitute bias and that no abuse of discretion has been shown.[7]

---

[7]To the extent that Vafaiyan appears to argue that Judge Price was previously employed by the City, the record from the hearing on the motion to recuse demonstrates that the trial court found that the forfeiture was accomplished by district and state employees, not city employees, and that the City of Wichita Falls was not a party to the case.

6

We overrule Vafaiyan's third issue.[8]

## V.  CONSOLIDATION WAS NOT AN ABUSE OF DISCRETION

In his fifth issue, Vafaiyan argues that the trial court abused its discretion by consolidating the five forfeiture cases into one.  Vafaiyan argues that the consolidation was in violation of Texas Rule of Civil Procedure 174 because it "prejudiced" him since the cases were "all different in facts and circumstances, time[,] date, [and] witnesses."[9]

We review the trial court's decision to consolidate under an abuse of discretion standard.  *See Owens-Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 715 (Tex. App.—Dallas 1997, no writ).  Texas Rule of Civil Procedure 174 governs the consolidation of actions.  Tex. R. Civ. P. 174.  Rule 174(a) provides,

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

---

[8]To the extent that Vafaiyan's argument encompasses a challenge to the propriety of the ruling on the motion to lease his home, we hold that the record before us does not reveal that the trial court abused its discretion because article 59.02(e) allows the trial court to sell the seized property if that is the only method by which the value of the property may be preserved.  *See* Tex. Code Crim. Proc. Ann. art. 59.02(e) (Vernon Supp. 2009).

[9]Vafaiyan also argues that holding the consolidation hearing in the absence of one party was improper and invalid.  But the record reveals that he was present at the hearing.  Vafaiyan does not have standing to argue for others who were not present and does not show how he was harmed by the fact that they were not present.

7

Tex. R. Civ. P. 174(a). Rule 174 gives the trial court broad discretion to consolidate cases with common issues of law or fact. *See Martin*, 942 S.W.2d at 716. However, if "all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion," the trial court does not have any discretion to order consolidation. *Womack v. Berry*, 156 Tex. 44, 51, 291 S.W.2d 677, 683 (1956).

The trial court may consolidate actions that relate to substantially the same transaction, occurrence, subject matter, or question. *See Martin*, 942 S.W.2d at 716. The actions should be so related that the evidence presented will be material, relevant, and admissible in each case. *Id.* In deciding whether to consolidate, the trial court must balance the judicial economy and convenience that may be gained by the consolidation against the risk of an unfair outcome because of prejudice or jury confusion. *Id.*

Even if the cases share common questions of law and fact, an abuse of discretion may be found if the consolidation results in prejudice to the complaining party. *Id.* However, we may not presume prejudice; it must be demonstrated. *Id.* Where the record does not reveal actual prejudice, the consolidation does not provide a basis for reversal. *Id.*

Here, the record reveals that the two vehicles, the home, and the sums of money were seized because they were all related to Vafaiyan's sale of pseudoephedrine to methamphetamine makers. That overall scheme connected

8

the items, even though they were seized at different times. Moreover, Vafaiyan does not demonstrate how he was prejudiced by the consolidation of the cases. He argues that having four counsel in one case creates "great confusion for parties, counsel[], [and] juries and ultimately prejudices [him] where the State is attempting to strip [him] out of 30 years['] life saving[s]." This case, however, was not tried to a jury, and the record does not reflect that the trial court was confused by the various counsel or by the different facts and circumstances, nor does the record reflect that Vafaiyan was prejudiced.[10] An unfavorable decision, by itself, is not evidence of prejudice. *See id.* (stating that we cannot presume prejudice). We cannot say that the trial court here acted without reference to any guiding rules or principles or acted in an arbitrary and unreasonable manner by consolidating the forfeiture cases under rule 174. *See* Tex. R. Civ. P. 174. We therefore hold that the trial court did not abuse its discretion by consolidating the five forfeiture cases involved in this appeal. *See Martin*, 942 S.W.2d at 719 (holding that trial court did not abuse its discretion by consolidating asbestos-exposure cases). We overrule Vafaiyan's fifth issue.

## VI. DENYING CONTINUANCE WAS NOT AN ABUSE OF DISCRETION

---

[10]As stated by the assistant district attorney at the hearing on the motion to consolidate,

> The witnesses that will testify I think would testify to the same facts. Obviously, the times of seizure and circumstances regarding the seizure of each piece of property will be a little bit different, but the common scheme of the profits that were made by Mr. Vafaiyan in these cases will be the same throughout each case.

9

In his seventh issue, Vafaiyan argues that the trial court abused its discretion by refusing to compel the State to produce thirteen items "necessary to respond to the [S]tate['s] motion for [summary judgment]" and by failing to follow 166a(g).[11] Specifically, Vafaiyan complains that the trial court abused its discretion when it denied his motion for continuance, in which he requested an additional thirty days after the requested documents were received, to respond to the State's motion for summary judgment.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). The trial court's ruling denying a motion for continuance will not be disturbed unless a clear abuse of discretion is evident in the record. *See Barron v. Vanier*, 190 S.W.3d 841, 847 (Tex. App.—Fort Worth 2006, no pet.) (op. on reh'g). If the appellant provides no record of the evidence presented to the trial court, we must presume that the evidence supports the ruling. *See Green v. Kaposta*, 152 S.W.3d 839, 842 (Tex. App.—Dallas 2005, no pet.).

A litigant who fails to diligently use the rules of civil procedure for discovery purposes is not entitled to a continuance. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988). In deciding whether a trial court abused its discretion by denying a motion for continuance seeking additional time to conduct discovery, we consider factors such as the length of time the case has been on

---

[11]Although Vafaiyan's brief references "166(g)," it appears that he meant "166a(g)" because he does not complain that the trial court should have required the State to set forth an additional statement of pertinent facts.

file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

Here, the record reveals that the State filed its notice of seizure and intended forfeiture in April 2004 and that the forfeiture cases were consolidated on August 4, 2008. Also on August 4, 2008, the State filed its motion for summary judgment. Two weeks later, Vafaiyan's attorney filed his first motion for continuance, and that same day, the trial court granted a continuance until October 29, 2008. On August 27, 2008, Vafaiyan, proceeding pro se, filed a motion for continuance, requesting ninety days to respond to the State's motion for summary judgment, but there is no ruling on this motion in the record before us. On October 24, 2008, Vafaiyan's attorney filed his second motion requesting a continuance until November 29, 2008. On October 27, 2008, Vafaiyan, acting pro se, filed a motion requesting that the summary judgment be "dismissed" or alternatively that he be granted a ninety-day continuance. That same day, the trial court granted a continuance until November 29, 2008. On November 21, 2008, Vafaiyan's attorney filed his third motion requesting a continuance until January 29, 2009, because "[t]here are hundreds of pages of exhibits," "[i]t has taken hours to go through these exhibits," and "[t]he effort to obtain discovery [because his client was in the penitentiary] has proven most difficult." Without receiving an explicit ruling on the third motion for continuance, on January 29, 2009, Vafaiyan's counsel filed a response to the State's motion for summary

11

judgment,[12] and Vafaiyan filed his "Pre Production Respon[se] To State['s] Motion For Summary Judgment And Motion For Continuance Till Requested Production, Discovery Obtained." The trial court thereafter denied Vafaiyan's request for an additional continuance.

In summary, the record demonstrates that the initial case had been on file for over four years before the State filed its motion for summary judgment; that Vafaiyan had been granted multiple continuances; that Vafaiyan's attorney was able to file a response to the State's motion for summary judgment on January 29, 2009, despite Vafaiyan's claims that additional evidence was needed to prove that the property had been obtained legally; that Vafaiyan himself was able to file a response; and that the trial court did not consider the motion and responses until February 24, 2009. Moreover, Vafaiyan's motion complained that he had requested the documents from the State in September 2008, but he did not explain his failure to make diligent efforts to secure such discovery since 2004 when the initial case was filed. Because all of the pertinent factors weigh in favor of the State, we hold that the trial court acted within its discretion by denying Vafaiyan's motion for continuance. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161 (listing factors); *Duerr v. Brown*, 262 S.W.3d 63, 79 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that one year was sufficient time for discovery and concluding that all factors weighed in favor of denying continuance). We overrule Vafaiyan's seventh issue.

---

[12]This response also covered Vafaiyan's house at 2900 Kyle Cove.

12

## VII. No Abuse of Discretion Shown by Denying Vafaiyan's Motion For Leave To File Untimely Supplemental Response

In his eighth issue, Vafaiyan argues that the trial court abused its discretion by sustaining the State's objections to his untimely supplemental response and by granting summary judgment for the State.[13] Vafaiyan contends that TDCJ rules prevented him from obtaining a stamp to mail his supplemental response and that this constituted "excusable neglect," not conscious indifference.

In a summary judgment proceeding, the nonmoving party may file and serve opposing affidavits or other written responses no later than seven days prior to the scheduled hearing.[14] Tex. R. Civ. P. 166a(c). Only with the trial court's permission may the nonmoving party file summary judgment evidence past the seven-day deadline. *See id.* We review a trial court's ruling on a motion for leave to file a late summary judgment response for an abuse of discretion. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002); *McClure v. Denham*, 162 S.W.3d 346, 349 (Tex. App.—Fort Worth 2005, no pet.).

---

[13]We note that Vafaiyan's argument challenges only the trial court's ruling sustaining the State's objections to his supplemental response to the State's motion for summary judgment. Vafaiyan does not challenge the trial court's ruling sustaining the State's objections to his affidavit and to the summary judgment evidence filed by his counsel.

[14]The trial court can decide the motion for summary judgment on submission, without an appearance by the attorneys before the court. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998). Regardless, the hearing date determines the time for response to the motion. *Id.*

13

Here, as noted above, the State filed its motion for summary judgment on August 4, 2008. Within that motion, the State gave notice that their motion would be submitted to the trial court for consideration without a hearing on August 29, 2008 at 5:00 p.m. Thereafter, as noted above, Vafaiyan and his attorney filed multiple motions for continuance and ultimately filed their responses on January 29, 2009. On February 2 and February 4, 2009, the attorneys signed a Rule 11 Agreement, agreeing that the State had until 5:00 p.m. on February 17, 2009, to file a reply to Vafaiyan's summary judgment response and stating that the new final submission date for the motion for summary judgment would be extended until 5:00 p.m. on February 23, 2009.[15]

On February 11, 2009, Vafaiyan filed a "Motion For Continuance And Request [for] Leave To Amend The Response To The State['s] Motion For Summary Judgment," in which Vafaiyan stated that "[l]ately" he had received evidence that supported his summary judgment response and that he wished to amend his previous response to incorporate the "new evidence." On February 17, 2009, the trial court denied Vafaiyan's motion for continuance and leave to amend his response. Vafaiyan thereafter placed his supplemental response in the TDCJ mail on February 20, 2009, but it was not received by and filed with the

---

[15]Vafaiyan did not sign the agreement, and therefore argues that it is void because he was representing himself pro se in the forfeiture case involving his house. The Rule 11 Agreement was approved by the trial court and filed on February 5, 2009, but the document does not state whether Vafaiyan received a copy. Because, as discussed below, Vafaiyan's motion for continuance and leave to amend his response were denied, the failure to include Vafaiyan in the Rule 11 Agreement is harmless.

14

trial court until February 26, 2009. As noted above, the trial court considered the motion for summary judgment and response on February 24, 2009. The State filed objections to Vafaiyan's supplemental response, and the trial court sustained the State's objections.

Based on the foregoing, Vafaiyan failed to obtain the trial court's permission, as required by rule 166a(c), to file his response. Thus, we interpret Vafaiyan's argument to be that the trial court erred by denying his motion for leave to supplement his response. Yet, Vafaiyan's motion for leave does not specify when he received the "new evidence," what the "new evidence" consisted of, where the "new evidence" came from (though it intimates that it was not from the State), and why he could not have obtained the "new evidence" prior to the time his initial response was filed. Because Vafaiyan did not show why his failure to timely supplement was not intentional or the result of conscious indifference, *see Carpenter*, 98 S.W.3d at 688, we hold that the trial court did not abuse its discretion by denying Vafaiyan's motion for leave to supplement his summary judgment response. *See McClure*, 162 S.W.3d at 349 (holding that trial court did not abuse its discretion by overruling appellant's motion for leave to file supplemental evidence because appellant did not show that his failure to timely produce affidavit was not intentional or the result of conscious indifference). We overrule this portion of Vafaiyan's eighth issue.

## VIII. SUMMARY JUDGMENT FOR THE STATE WAS PROPER

15

In the remainder of his eighth issue and in issues six, eleven, twelve, thirteen, fourteen, fifteen, fifteen A, and sixteen, Vafaiyan challenges whether the trial court's grant of summary judgment forfeiting his assets in favor of the State was proper. Specifically, Vafaiyan argues that there was no probable cause to seize the property, that the search affidavits were based on hearsay, that all of the seizures were therefore illegal, and that the State failed to show a nexus between the property that was forfeited and any criminal activity.

## A. Law on Forfeiture

Chapter 59 of the Texas Code of Criminal Procedure prescribes the procedures governing civil forfeiture, which is an in rem proceeding against contraband. *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692–93 (Tex. 2004); *Hardy v. State*, 102 S.W.3d 123, 126–27 (Tex. 2003). Under chapter 59, property, including currency, that has been used in the commission of a felony or that constitutes proceeds gained from the commission of a felony in violation of Chapter 481 of the Texas Health and Safety Code (the Texas Controlled Substances Act) is contraband subject to forfeiture. Tex. Code Crim. Proc. Ann. art. 59.01(2) (A)–(D) (Vernon Supp. 2009); *Real Prop. Located at 4125 Blanton, Wichita Falls v. State*, 230 S.W.3d 476, 481 (Tex. App.—Fort Worth 2007, pet. denied).

In a Chapter 59 forfeiture hearing, the trial court must first determine whether the property in question is indeed "contraband" as defined by the statute. Tex. Code Crim. Proc. Ann. arts. 59.01(2) (Vernon Supp. 2009), 59.05 (Vernon

16

2006); *1996 Cadillac & 2002 Lincoln Autos. v. State*, No. 02-07-00017-CV, 2008 WL 163552, at *4 (Tex. App.—Fort Worth Jan. 17, 2008, no pet.) (mem. op.). The State must establish, by a preponderance of the evidence, a substantial nexus or connection between the property to be forfeited and the statutorily defined criminal activity. *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex. 1991); *Forty-Seven Thousand Two Hundred Dollars U.S. Currency v. State*, 883 S.W.2d 302, 306 (Tex. App.—El Paso 1994, writ denied); *1996 Cadillac & 2002 Lincoln Autos.*, 2008 WL 163552, at *4. Thus, the State must prove, considering all the evidence, that it is more reasonably probable than not that the seized property was either intended for use in, or derived from, a violation of the offenses enumerated in the forfeiture statute. *$9,050.00 in U.S. Currency v. State*, 874 S.W.2d 158, 161 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

The State may prove the required substantial nexus through circumstantial evidence. *$11,014.00*, 820 S.W.2d at 785. When relying on circumstantial evidence, the State must offer evidence that raises more than a mere surmise or suspicion regarding the source of the property or money. *Id.* However, the State is not required to exclude every possible means by which a person may have acquired the seized property. *$7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 586 (Tex. App.—Texarkana 2000, no pet.); *Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency v. State*, 944 S.W.2d 24, 27 (Tex. App.—Texarkana 1997, no writ). The trial court may draw any and all reasonable

17

inferences from the circumstances shown by the evidence. *$7,058.84*, 30 S.W.3d at 586.

**B.      The $2,452.00 and the $200,382.62 in U.S. Currency**

In his twelfth issue, Vafaiyan argues that the trial court erred by ordering the forfeiture of $2,452.00 in currency.  In issue fifteen A, Vafaiyan argues that the trial court erred by ordering the forfeiture of $200,382.62 that was located in a safety deposit box.

The record contains the affidavit of Bobby Dilbeck, an investigator with the Drug Enforcement Division of the Wichita County District Attorney's Office, who averred the following:

> 3.   In March of 2004, I was involved in an investigation into the activities of Reza Vafaiyan, a/k/a Gholamereza Vafaiyan ("Vafaiyan").  On March 22, 2004, Task Force officers, including myself, John Spragins, Chris Taylor, and Jim Whitehead were conducting surveillance on the Walgreens store at the intersection of Kemp and Southwest Parkway in Wichita Falls, Texas.  Employees of that business had called law enforcement on numerous occasions to identify subjects purchasing large amounts of pseudoephedrine. On March 22, 2004, Walgreens employees contacted officers and gave the description of a male subject who had just purchased two boxes of pseudoephedrine tablets.  During the surveillance, officers observed that this individual was Vafaiyan, an individual who officers recognized and knew owned a convenience store business named Krystal Mart in Wichita Falls, Texas, and observed Vafaiyan exit the store and enter a red Pontiac Grand Am vehicle.  I knew that an investigation was pending with the U.S. Drug Enforcement Administration ("DEA") regarding Vafaiyan's purchase of and resell of various chemicals used in the manufacture of methamphetamine, including pseudoephedrine.  After Vafaiyan left the Walgreens store, officers followed him to another Walgreens store located in Wichita Falls, Texas.  Officers observed Vafaiyan enter the Walgreens, and saw him purchase two more boxes of pseudoephedrine tablets. Officers continued to follow Vafaiyan as he left that Walgreens, and

18

saw Vafaiyan drive in an erratic manner. Vafaiyan was stopped and detained, and his identity was confirmed through his driver's license.

4. Upon approaching Vafaiyan's vehicle, officers observed two plastic bags laying in the front seat of the vehicle, with two boxes of pseudoephedrine tablets in each bag. Based on the information gained in the prior investigation and based on Vafaiyan's purchases on that day, he was arrested for possession or transport of certain chemicals with intent to manufacture a controlled substance. In a suitcase located within the trunk of the vehicle, numerous receipts were found from businesses in the Wichita Falls and Dallas/Fort Worth areas indicating the purchase of a large number of pseudoephedrine tablets, lithium batteries, and ether starting fluid. From my experience in the investigation of illegal drug activity, I know that all of these items are used in the manufacture of methamphetamine. . . . Vafaiyan told me on that day that he knew the items he had been purchasing were used to manufacture methamphetamine.

5. Along with the receipts, officers also found a quantity of 20 dollar bills located in the suitcase in Vafaiyan's trunk. The money was counted at the scene, in Vafaiyan's presence, and it totaled $2,300. Vafaiyan also had an additional $152 in his wallet. Based on the DEA investigation and the facts learned in my surveillance of Vafaiyan, this money was seized as being proceeds from Vafaiyan's illegal activity of money laundering and transporting certain precursor chemicals with intent to manufacture methamphetamine.

6. On April 28, 2004, I served a grand jury subpoena on the Texoma Community Credit Union, and learned that Vafaiyan had three accounts and a safe deposit box at that establishment. I know based on my experience and training in the field of narcotics that persons often keep proceeds from illegal activity in bank accounts and safe deposit boxes. Based on this knowledge and the other knowledge I had gained regarding Vafaiyan's illegal activities, I applied for and received an evidentiary search warrant for [Vafaiyan's safety deposit box]. . . .

7. On April 29, 2004, pursuant to the warrant, I conducted a search of Vafaiyan's safety deposit box at the Texoma Community Credit Union. My search revealed $200,382.62 in United States currency in quantities of 50 dollar bills, 100 dollar bills, and loose coins. The 50 dollar bills and 100 dollar bills were packaged in two plastic Wal-

19

Mart bags. Based on the investigation of Vafaiyan's criminal activities and the profits from his large scale selling of precursor materials used in the manufacture of methamphetamine, DPS officer Mark Ball seized the $200,382.62 in currency as contraband. . . .

The record also contains depositions from several convicted methamphetamine manufacturers who testified regarding the frequency of their purchases of pseudoephedrine tablets from Vafaiyan. One of the individuals who purchased pseudoephedrine tablets from Vafaiyan stated in his deposition that during May and June 2003, he gave Vafaiyan $2,000–$3,000 three times a week, and then after that, he gave Vafaiyan $2,000–$3,000 approximately once a month until January 2004. Other individuals testified to similar large purchases. Moreover, in his affidavit, Sergeant Ball averred that he personally reviewed paperwork and receipts that were seized from Vafaiyan's vehicles, the Kyle Cove property, and Krystal Mart, as well as sales records from Target, Wal-Mart, and other various distributors. Based on his review of those records, he calculated that Vafaiyan purchased

> at least the following amounts of pseudoephedrine: 384 boxes and bottles in 2000; 1,375 boxes and bottles in 2001; 9,593 boxes and bottles in 2002; 11,206 boxes and bottles in 2003; and 521 boxes and bottles from January through April 2004. In total, from January 2000 to April 2004, Vafaiyan purchased 26,079 boxes and bottles of pseudoephedrine, along with 9,257 starting fluid cans and 12,137 lithium batteries. My review of Vafaiyan's receipts also indicated that during this time period, Vafaiyan spent $211,284.81 on these materials. . . .

20

Sergeant Ball also reviewed paperwork related to Vafaiyan's personal bank accounts, as well as accounts related to his Krystal Mart business. Sergeant Ball averred that

> the Krystal Mart account had a positive balance in 2002 of $1,778.43, it then had negative balances of $5,874.10 and $6,884.67 in 2003 and 2004, respectively. In other words, during the time of law enforcement's overall investigation into Vafaiyan's activities, Vafaiyan's Krystal Mart business account showed a loss. I believe that this is further evidence that the large amounts of cash seized from Vafaiyan were proceeds from his criminal activities, rather than any legitimate source.

Based on the evidence attached to the State's motion for summary judgment, the circumstantial evidence established a substantial nexus that the $2,452.00 and the $200,382.62 were proceeds gained from the commission of a felony in violation of Chapter 481 of the Texas Controlled Substances Act, which made the sums of currency contraband subject to forfeiture. *See* Tex. Code Crim. Proc. Ann. art. 59.01(2)(C); Tex. Health & Safety Code Ann. ch. 481; *Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency v. State*, 944 S.W.2d 24, 28–29 (Tex. App.—Texarkana 1997, no writ) (holding that evidence was legally sufficient to support forfeiture of currency when testimony established more than a mere surmise or suspicion that the money was connected to drug trafficking, even though appellant was convicted for possession of methamphetamine rather than for sale of it, because baggies and scales were also recovered). Because the State demonstrated probable cause for seizing the currency by establishing a substantial connection or nexus between the currency

21

and the defined criminal activity, the trial court did not err by ordering the forfeiture of the contraband currency. *See $11,014.00,* 820 S.W.2d at 785. We overrule Vafaiyan's twelfth issue and his issue fifteen A.

### C.    The House and $4,300.00 in U.S. Currency

In his sixth issue, Vafaiyan argues that the trial court erred by ordering the forfeiture of his house and $4,300.00 in U.S. currency. The summary judgment evidence presented by the State reveals that in early April 2004, Dale Newkirk, Diversion Investigator with the United States Drug Enforcement Administration, contacted DPS Sergeant Mark Ball and asked him to assist with an investigation of Vafaiyan. On April 25 and 26, 2004, DPS troopers and officers with the Wichita Falls Police Department followed Vafaiyan to the Dallas/Fort Worth area; from there to Shreveport, Louisiana; and then back to the Dallas/Fort Worth area. During the surveillance, Newkirk observed Vafaiyan stop at eleven different stores, including Wal-Mart, Target, and two wholesale distributors. During two of those stops, Newkirk observed Vafaiyan purchase pseudoephedrine tablets. On April 27, 2004, Vafaiyan returned to his home at Kyle Cove and was arrested pursuant to a warrant for possession of methamphetamine. Sergeant Ball thereafter submitted an eighteen-page affidavit detailing the surveillance that had been performed on Vafaiyan. A magistrate found that "the verified facts stated by Affiant in said Affidavit show that Affiant has probable cause for the belief expressed therein and establish existence of proper grounds" and issued a search warrant for Vafaiyan's home.

22

During the search of Vafaiyan's home, officers found, among other things, two cases, each of which contained twenty-four boxes of ten-count Sudafed 24-Hour; $4,300.00 in U.S. currency in a desk drawer in a bedroom; a sack containing suspected pseudoephedrine pills in a desk drawer; receipts for pills, batteries, and Coleman fuel; empty boxes for starter fluid and pseudoephedrine; and a wireless observation system. In his deposition, Vafaiyan admitted that he had kept cases of Sudafed at his house and said that it was for safety purposes (i.e., so it would not all get stolen if his store was broken into).

Based on the evidence attached to the State's motion for summary judgment, the State had probable cause to search and seize Vafaiyan's home because he had been seen purchasing large quantities of pseudoephedrine, as well as other precursor ingredients used in the manufacture of methamphetamine,[16] and taking them back to his house. The circumstantial evidence established a substantial nexus that Vafaiyan's home was being used in the commission of a felony in violation of Chapter 481 of the Texas Controlled Substances Act, which made his home contraband subject to forfeiture. *See* Tex. Code Crim. Proc. Ann. art. 59.01(2)(B)(i); Tex. Health & Safety Code Ann. ch. 481; *Real Prop. Located At 4125 Blanton,* 230 S.W.3d at 488 (holding that evidence was legally and factually sufficient to establish that property was contraband and that seizure was valid); *see also Lot 6, NW 17' of 5, Block 5,*

_____

[16]Vafaiyan admitted during his deposition that he had been told by the DEA that pseudoephedrine is the primary precursor chemical utilized in the illicit manufacturing of methamphetamine.

*Port Lavaca Original Townsite, (401 S. Commerce) v. State*, No. 13-07-00326-CV, 2009 WL 1801466, at *4 (Tex. App.—Corpus Christi June 25, 2009, no pet.) (mem. op.) (holding that because State had provided evidence demonstrating that appellant stored and sold controlled substances in his house and because appellant judicially confessed to engaging in such activities, State's evidence was legally sufficient to establish that appellant used or intended to use his house to aid in unlawful delivery of controlled substances, thus supporting finding that house was contraband subject to forfeiture). Additionally, circumstantial evidence established a substantial nexus that the $4,300.00, which was found in a desk drawer in a bedroom in Vafaiyan's house, was proceeds gained from the commission of a felony in violation of Chapter 481 of the Texas Controlled Substances Act, which made the $4,300.00 in currency contraband subject to forfeiture. *See* Tex. Code Crim. Proc. Ann. art. 59.01(2)(C); Tex. Health & Safety Code Ann. ch. 481; *Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency*, 944 S.W.2d at 28–29. Because the State demonstrated probable cause for seizing the property and the money by establishing a substantial connection or nexus between the seized property and money and the defined criminal activity, the trial court did not err by ordering the forfeiture of the contraband property and currency. *See $11,014.00,* 820 S.W.2d at 785. We overrule Vafaiyan's sixth issue.

24

### D. The $2,100.00 and the 2000 Pontiac

In his thirteenth issue, Vafaiyan argues that the trial court erred by ordering the forfeiture of $2,100.00 in U.S. currency and his 2000 Pontiac.

As set forth above, Investigator Dilbeck and others followed Vafaiyan's red Pontiac Grand Am on March 22, 2004, as he made numerous stops to purchase pseudoephedrine tablets. On April 27, 2004, Sergeant Ball searched Vafaiyan's 2000 Pontiac and found the following items in the trunk: six cases of Prestone Starter, two cases of Sudafed 24-Hour, thirty-three boxes of 240-milligram Sudafed, one box containing four cases of "Maxbrand Suda 60s" and six boxes of Sudafed 240 milligrams, and five eight-packs of lithium batteries. During the search, Sergeant Ball found miscellaneous receipts in Vafaiyan's possession and $2,100.00 in U.S. currency inside the console of the Pontiac.

Based on the evidence attached to the State's motion for summary judgment, the State had probable cause to search and seize Vafaiyan's Pontiac and the money therein because he had been using the car to travel to different stores to purchase pseudoephedrine, as well as other precursor ingredients used in the manufacture of methamphetamine. *See $574.37 U.S. Coin & Currency v. State*, No. 02-06-00434-CV, 2008 WL 623793, at *5–7 (Tex. App.—Fort Worth Mar. 6, 2008, no pet.) (mem. op.) (holding that State demonstrated (1) that it was more probable than not that the cash was either intended for use in or derived from a violation of chapter 481 and thus constituted contraband subject to forfeiture and (2) that truck was contraband because it was used in the

25

commission of a felonious act, i.e., possessing and transporting methamphetamine). Because the State demonstrated probable cause for seizing the vehicle and the currency by establishing a substantial connection or nexus between the currency and the car and the defined criminal activity, the trial court did not err by ordering the forfeiture of the Pontiac and the currency, which were contraband. *See $11,014.00,* 820 S.W.2d at 785. We overrule Vafaiyan's thirteenth issue.

### E. The $43,290.94 From Savings and Checking Accounts

In his fifteenth issue, Vafaiyan argues that the trial court erred by forfeiting $43,290.94 in U.S. currency.

After executing the searches described above, on May 4, 2004, Sergeant Ball executed a search warrant on First American Bank in Wichita Falls, Texas, and requested information for all bank accounts held in Vafaiyan's name. Sergeant Ball discovered that Vafaiyan had three accounts at First American Bank with balances of $30,519.37; $12,030.31; and $741.26, for a total of $43,290.94. Sergeant Ball seized the money in those three accounts "as being proceeds from Vafaiyan's illegal activities."

Based on the evidence attached to the State's motion for summary judgment, the circumstantial evidence established a substantial nexus that the $43,290.94 constituted proceeds gained from the commission of a felony in violation of Chapter 481 of the Texas Controlled Substances Act, which made the currency contraband subject to forfeiture. *See* Tex. Code Crim. Proc. Ann. art.

26

59.01(2)(C); Tex. Health & Safety Code Ann. ch. 481; *Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency*, 944 S.W.2d at 28–29. Because the State demonstrated probable cause for seizing the currency by establishing a substantial connection or nexus between the currency and the defined criminal activity, the trial court did not err by ordering the forfeiture of the contraband currency. *See $11,014.00,* 820 S.W.2d at 785. We overrule Vafaiyan's fifteenth issue.

### F. The $128,719.49 From the Floor Safe and the F-150 Pickup

In his fourteenth issue, Vafaiyan contends that the trial court erred by forfeiting $128,719.49 to the State. In his sixteenth issue, Vafaiyan contends that the trial court erred by ordering the forfeiture of his F-150 Pickup Truck.

Sergeant Ball's affidavit states the following with regard to the search of Krystal Mart and the F-150 pickup:

> On August 9, 2004, I received another telephone call from Investigator Newkirk of the DEA in Ft. Worth, Texas. Investigator Newkirk told me that he had received a telephone call from Mike Ellsworth, who works in the security department of Target Stores. Mr. Ellsworth had notified Investigator Newkirk that at around 10:30 that morning[], Vafaiyan and another man, later identified as Troy Vaughn, were inside the Denton, Texas Target store located at 2315 Colorado Blvd., Denton, Texas. Mr. Ellsworth further stated that Vafaiyan and Vaughn had each purchased the maximum amount of pseudoephedrine products and then exited the store. Personnel from the Target store observed and video-taped these events. Mr. Ellsworth stated that store security personnel observed Vafaiyan and Vaughn jumping in the air, laughing, and clapping their hands together. The store security personnel also observed Vafaiyan put the pseudoephedrine products inside Vafaiyan's vehicle. The store security personnel then observed Vafaiyan depart the store in a 2001 Maroon Ford F-150 pickup bearing TX Tag 4TR-G64.

27

Investigator Newkirk also told me that he had received a second telephone call from Mr. Ellsworth at approximately 1:30 p.m. that same day. During the second telephone call, Mr. Ellsworth stated that Vafaiyan and Vaughn were inside the Target store near Love Field Airport in Dallas, Texas and that each had purchased large quantities of pseudoephedrine products. I know from my training and experience that in order to get around maximum purchase amounts allowed by federal regulations, meth cooks and their suppliers frequently buy the maximum amount of pseudoephedrine products at multiple stores, which is known as "smurfing."

20. As a result of the information received from Investigator Newkirk, I traveled to the Krystal Mart to speak with Vafaiyan about his trip to Dallas that day. Vafaiyan stated that he had not been to Dallas that day. I advised officers to hold Mr. Vafaiyan outside the store while I obtained another search warrant for Krystal Mart, and for the 2001 F-150 pickup Vafaiyan had driven that day. . . .

The pickup contained twenty-five empty store sacks, correlating with some of the stores at which Vafaiyan had stopped to purchase pseudoephedrine and tending to prove that Vafaiyan had transported the pseudoephedrine in his vehicle. The search and seizure log from the search of Krystal Mart revealed that within a safe inside Krystal Mart, officers found $128,719.49; three rings; and a NationsBank credit card.

Based on the evidence attached to the State's motion for summary judgment, the State had probable cause to search and seize Vafaiyan's Ford F-150 pickup and the money from the safe at Krystal Mart because Vafaiyan had used the pickup to travel to different stores to purchase pseudoephedrine, which he sold in Krystal Mart. *See $574.37*, 2008 WL 623793, at *5–7. The circumstantial evidence established a substantial nexus that the $128,719.49 constituted proceeds gained from the commission of a felony in violation of

28

Chapter 481 of the Texas Controlled Substances Act, which made the currency contraband subject to forfeiture, and the pickup was contraband because it was used in the commission of a felony in violation of Chapter 481 of the Texas Controlled Substances Act, which made the pickup contraband subject to forfeiture. *See* Tex. Code Crim. Proc. Ann. art. 59.01(2)(C); Tex. Health & Safety Code Ann. ch. 481; *Four Thousand One Hundred Eighty-Two Dollars in U.S. Currency*, 944 S.W.2d at 28–29. Because the State demonstrated probable cause for seizing the currency and the Ford F-150 by establishing a substantial connection or nexus between the currency and the Ford F-150 and the defined criminal activity, the trial court did not err by ordering the forfeiture of the contraband. *See $11,014.00,* 820 S.W.2d at 785. We overrule Vafaiyan's fourteenth and sixteenth issues.

### G. Trial Court Properly Granted Summary Judgment For the State

In the remainder of his eighth issue and in his eleventh issue, Vafaiyan argues that the trial court erred by granting the State's motion for summary judgment and that the trial court erred by forfeiting his assets because the forfeitures were barred by the rule of law.

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* We

29

indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

Here, we have reviewed each of the seizures and found that the items seized constituted contraband and were subject to forfeiture.[17] The circumstantial evidence attached to the State's motion for summary judgment demonstrated a substantial nexus between each of the seized properties and the defined criminal activity.

Although Vafaiyan and his counsel each filed a response to the State's motion for summary judgment, the State objected to Vafaiyan's "self-serving, conclusory affidavit" (which was the only "evidence" he attached to his response) and objected to nine out of the ten exhibits attached to Vafaiyan's counsel's response. The trial court granted all of the State's objections to Vafaiyan's summary judgment evidence, leaving the affidavit of Sergeant Ball as the only "controverting" summary judgment evidence. Sergeant Ball's affidavit does not controvert the evidence presented by the State but rather, as set forth above, bolsters it. Thus, there is no contradictory evidence to raise a genuine issue of

---

[17]The trial court's order granting final summary judgment of forfeiture states, "Although the cases have been consolidated, the Court's decision has considered each case and factual situation separately in ruling on the pending Motion for Summary Judgment."

30

material fact. Because we have held above that the trial court did not abuse its discretion by ordering the forfeiture of each of the items and amounts of currency set forth above and because we have found nothing that says that the forfeiture of those items is barred by the rule of law, we hold that the trial court properly granted summary judgment for the State. *$32,960 in U.S. Currency v. State*, No. 13-04-00526-CV, 2005 WL 2560376, at *3 (Tex. App.–Corpus Christi Oct. 13, 2005, no pet.) (mem. op.) (holding that trial court properly granted summary judgment for the State because the State had adequately established a reasonable belief that a substantial connection existed between the property to be forfeited and the underlying criminal activity). We overrule the remainder of Vafaiyan's eighth issue and his eleventh issue.

## IX. FINDINGS OF FACT AND CONCLUSIONS OF LAW NOT REQUIRED

In his fourth and tenth issues, Vafaiyan argues that the trial court abused its discretion by failing to make findings of fact and conclusions of law. Vafaiyan contends that such failure forced him to guess at all the possible reasons for denying his motions, which made it difficult for him to appeal.

Findings of fact and conclusions of law have no place in a summary judgment proceeding. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994). The reason findings and conclusions "have no place" in a summary judgment proceeding is that for summary judgment to be rendered, there cannot be a "genuine issue as to any material fact[,]" and the legal grounds are limited to those stated in the motion and response. Tex. R. Civ. P. 166a(c); *IKB Indus.*

31

*(Nig.) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). In other words, if summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and response. *IKB Indus. (Nig.) Ltd.*, 938 S.W.2d at 441. The trial court should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment. *Id.*

Here, because the trial court disposed of the case by granting the State's motion for summary judgment, we hold that the trial court did not abuse its discretion by not making findings of fact and conclusions of law. *See Linwood*, 885 S.W.2d at 103. We overrule Vafaiyan's fourth and tenth issues.

## X. NO HEARING REQUIRED ON THE MERITS OF THE SEIZURE OF VAFAIYAN'S HOME

In his second issue, Vafaiyan argues that the trial court abused its discretion by denying his motion for a hearing on the merits of the seizure of his home.[18] Vafaiyan appears to argue that the trial court was required to decide the case on the merits.

Article 59.05 of the code of criminal procedure, which governs forfeiture proceedings, states that "[a]ll cases under this chapter shall proceed to trial in the same manner as in other civil cases." Tex. Code Crim. Proc. Ann. art. 59.05(b) (Vernon 2006). The rules of civil procedure provide that a party may file a motion

---

[18]The record contains an "Order Granting Plaintiff's Motion To Sell." In that order, the trial court states that it held a hearing with all parties present, but no transcript appears in the record before us. For purposes of Vafaiyan's argument, we will presume that the trial court did not consider Vafaiyan's motion at this hearing.

for summary judgment, along with attachments. *See generally* Tex. R. Civ. P. 166a. If such motion and attachments show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion, then "[t]he judgment sought shall be rendered forthwith." Tex. R. Civ. P. 166a(c). If all issues are decided by summary judgment, no trial is necessary. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986) (noting that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard and that the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).

Because we have previously held that the trial court properly granted summary judgment in favor of the State (which included the summary judgment granting forfeiture of Vafaiyan's home as contraband), we hold that the trial court did not abuse its discretion by not holding a hearing on the merits of the seizure of Vafaiyan's house. *See generally* Tex. R. Civ. P. 166a. We overrule Vafaiyan's second issue.

## XI. No Abuse of Discretion Shown By Denying Motion for New Trial

In his ninth issue, Vafaiyan argues that the trial court abused its discretion by denying his motion for reconsideration, rehearing, and new trial.[19] Specifically, Vafaiyan argues in his brief that the trial court should have granted a new trial because he submitted new evidence, in the form of two affidavits, that proves the source of the seized money and that the trial court should have granted a new trial because the damages were manifestly too large.

Whether a motion for new trial on the ground of newly discovered evidence will be granted or refused is generally a matter addressed to the sound discretion of the trial judge, and the trial judge's action will not be disturbed on appeal absent an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.2d 715 (Tex. 2003). On review, every reasonable presumption will be made in favor of orders of the trial judge refusing new trials. *Id.* at 809–10.

Vafaiyan's motion for new trial mentions "new discover[y]." To obtain a new trial based on newly discovered evidence, Vafaiyan was required to satisfy the following elements: (1) admissible relevant evidence introduced on the

---

[19]We note that Vafaiyan filed an "Amended Motion For Reconsideration/New Trial And Request To Set Aside The Order" (hereinafter referred to as "motion for new trial") and presume that he is arguing that the trial court abused its discretion by denying this motion, which replaced his prior motion. *See* Tex. R. Civ. P. 62 (stating that an amended pleading adds to or withdraws from that which was previously pleaded to correct or to plead new matter and completely replaces and supersedes the previous pleading).

hearing for new trial demonstrating the existence of newly discovered evidence relied upon; (2) no knowledge of such evidence until after the conclusion of the trial and that such evidence could not have been discovered prior to the trial with the exercise of due diligence; (3) such evidence was not cumulative or to be used for impeachment; and (4) such evidence would probably produce a different result if a new trial was granted. *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 844 (Tex. App.—Dallas 2008, no pet.). Vafaiyan's motion for new trial references two exhibits that are not attached to his motion, but he does not explain why this evidence could not have been discovered prior to the time his response was due. Because the evidence is not attached to his motion for new trial, we cannot tell, and Vafaiyan does not specify, whether it is cumulative or whether it is to be used for impeachment. Moreover, Vafaiyan has not discussed how such newly discovered evidence, assuming it exists, would probably produce a different result if a new trial was granted. Vafaiyan has therefore failed to satisfy the elements necessary for obtaining a new trial based on newly discovered evidence. *See id.* We hold that the trial court did not abuse its discretion by denying Vafaiyan's amended motion for new trial. *See id.* (holding that trial court did not abuse its discretion by denying motion for new trial when elements of newly discovered evidence were not met).

Vafaiyan's motion for new trial also contains a one-sentence argument that "[w]ithout a New Trial, the damages to the defendant would be manifestly too large." In his brief, Vafaiyan states that "Rule 320 authorizes a new trial for good

35

cause when damages are manif[e]stly too large" and argues that "forfeiting my 30 years savings to [the S]tate including my house bought 25 years earlier was manifestly too large."

Vafaiyan's argument is not supported by case law. Article 59 of the Texas Code of Criminal Procedure specifically provides that "[p]roperty that is contraband is subject to seizure and forfeiture." *See* Tex. Code Crim. Proc. Ann. art. 59.02(a). A case filed under article 59 proceeds in rem, against the property that has been seized. *Silver Chevrolet Pickup*, 140 S.W.3d at 692. The forfeiture statutes do not set a dollar limit on what can be forfeited. Additionally, the forfeiture statutes have not been shown by the clearest proof to be so punitive in form and effect as to render them criminal. *See Fant v. State*, 931 S.W.2d 299, 306–07 (Tex. Crim. App. 1996). Considering only the evidence that is favorable to the award, as we are required to do, *see Browning v. Paiz*, 586 S.W.2d 670, 675–76 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.), we hold that the award is not so excessive that it shocks the conscience. The trial court thus did not abuse its discretion by denying Vafaiyan's motion for new trial on the ground that the damages were allegedly "manifestly too large." We therefore overrule Vafaiyan's ninth issue.

## XII. CONCLUSION

Having overruled each of Vafaiyan's issues, we affirm the trial court's summary judgment granted in favor of the State.[20]

PER CURIAM

PANEL:  WALKER, J.; LIVINGSTON, C.J.; and MEIER, J.

DELIVERED:  August 31, 2010

---

[20]On November 23, 2009, Vafaiyan filed a motion arguing that part of the appellate record pertaining to trial court cause number 164,160-C had been lost or destroyed.  We carried that motion to submission and now **DENY** it as moot because the appellate record before us contains a second supplemental clerk's record with the necessary documents from 164,160-C.  As noted in the analysis above, any documents mentioned by Vafaiyan in his brief that were not found in the appellate record were presumed to have been filed and denied; the actual documents were not necessary for deciding the issues Vafaiyan raised.