**Reversed and Remanded and Opinion filed August 27, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00462-CV

**THE STATE OF TEXAS, Appellant**

**V.**

**TREELINE PARTNERS, LTD., A TEXAS LIMITED PARTNERSHIP, AND LAROCA PARTNERS II, LTD., A TEXAS LIMITED PARTNERSHIP,**
**Appellees**

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 1016954**

## O P I N I O N

In this action arising from the State's condemnation of land containing commercial buildings and a free-standing billboard, the State challenges the judgment awarding a landowner nearly $4.9 million. In the dispositive issue, we conclude that the trial court abused its discretion by informing the State's attorney during voir dire that the attorney would be held in contempt if she tried "to talk about whether anybody believes that the State lowballs" or "anything similar." Because this ruling

prevented the State from determining if there were grounds to challenge potential jurors for cause and from intelligently exercising its preemptory strikes, we reverse the judgment and remand the case for a new trial consistent with this opinion.

## I. BACKGROUND

In order to widen Highway 290 in Houston, the State, acting through the Texas Department of Transportation (identified in the transcript as "Tx.Dot"),[1] filed a petition in condemnation to acquire a portion of the land located at Highway 290 and West 34th Street. The land was owned by "Treeline" and leased to a variety of other entities.[2] The State and Treeline were among the parties that objected to the Special Commissioners' award and sought trial de novo.

The jury found that the difference between the pre-taking and post-taking "market value of the whole property owned by [Treeline], including the sign site," was $4,880,520. After moving unsuccessfully for a new trial or for modification of the judgment, the State brought this appeal.[3]

The State presents eight issues for our review, but its first issue is dispositive. Because we agree that the trial court abused its discretion by refusing to allow the

---

[1] "Tx.Dot" also is sometimes written in the transcript with a final period, but to increase the clarity of any excerpts, we have omitted the final period without noting the deletion.

[2] We refer to Treeline as if it were the sole landowner and lessor. At trial, however, the landowner was identified variously as the Shears family, Treeline Partners, Ltd., and Laroca Partners II, Ltd. In the final judgment, the trial court ordered that the State recover fee simple title to the parcel of land from Treeline Partners, Ltd., Laroca Partners II, Ltd., CBS Outdoor, Inc. ("CBS"), and a dozen other defendants, but ordered compensation paid only to "Treeline" as the landowner and lessor of the land, and to CBS as the owner of the billboard and the lessee of the right to erect to erect and maintain the billboard on the premises. Because we reverse the judgment and remand the case for a new trial, it is unnecessary for us to identify precisely which interests were held by which parties to the judgment.

[3] Although the State also challenged the portion of the judgment in which CBS was awarded compensation for its billboard and leasehold interest, the State and CBS reached a settlement agreement while this appeal was pending. At the parties' request, we severed that portion of the appeal.

State to ask proper questions during voir dire, and that this abuse of discretion deprived the State of the right to a fair trial before an impartial jury, we reverse the judgment and remand the case without ruling on the State's remaining issues.

## II. VOIR DIRE

When reviewing the trial court's refusal to allow a particular line of questioning during voir dire, we apply an abuse-of-discretion standard. *See In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011) (per curiam). "Abuse of discretion" means different things in different contexts. *See Schuring v. Fosters Mill Vill. Cmty. Ass'n*, 396 S.W.3d 73, 76 (Tex. App.–Houston [14th Dist.] 2013, pet. denied). Because litigants have a right to question potential jurors to uncover bias or prejudice and to intelligently exercise peremptory strikes, abuse of discretion in this context turns on the propriety of the question. *Hill*, 334 S.W.3d at 228–29. When the trial court's denial of the right to ask a proper question prevents the litigant from determining whether grounds exist to challenge a potential juror for cause or prevents the litigant from intelligently using peremptory strikes, then the trial court abuses its discretion. *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989) (op. on reh'g).

## A.     The trial court abused its discretion.

The State contends that the trial court erred in cutting off four lines of questioning:  whether potential jurors believe that (1) the government's right to take private property is too great a power, (2) landowners should be paid more than market value for condemned property, (3) landowners should be compensated for sentimental value, and (4) the State lowballs its fair-market-value appraisals.

The first of these was duplicative of many other questions regarding the State's right to take private property. The next two lines of inquiry present closer questions, not only because of the dearth of caselaw on these types of inquiry, but also because

3

the record of voir dire shows that Treeline's counsel already had strongly implied to the jury that Treeline's property had sentimental value for which the State's offer was inadequate.

The last line of inquiry, however, does not present a close question. The trial court refused to allow the State's attorney to ask potential jurors "whether anybody believes that the State lowballs," and told the attorney that if she asked the question, then the trial court probably would hold her in contempt. When the attorney sought clarification about what she was not allowed to ask, the trial court not only refused to do so, but expanded the threat of contempt.

To see why the trial court's action constituted a harmful abuse of discretion, it is helpful to first place it in context. The State attempted to ask potential jurors if they believed that the State "lowballs" its appraisals of condemned property only after Treeline's counsel already had implied that this is indeed what the State does. The progression of that line of questioning from Treeline's attorney was as follows:

> Is there anyone on the panel who feels that when the State widens highways in front of retail centers that the property owner should not complain about the amount of compensation the State is willing to pay?
>
> . . . .
>
> Is there anyone that feels . . . you should not complain about what they are willing to pay you for what they have done to you?
>
> . . . .
>
> [T]here may be people on the panel in prior cases we've seen that think, look, I think if you own retail property on a highway and Tx.Dot needs to widen that highway, you should just take it, suck it up, take it and move on.
>
> . . . .
>
> I agree the State should pay for what they take but if they damage what you have left, you should suck it up and take it. Is there anyone on the first row that feels that way?

4

. . . .

[The following was asked after a potential juror stated that Tx.Dot had widened the road in front of the business he had built "from the ground up," and that the State did not offer to compensate the potential juror because the road didn't encroach on his property.] "Was there an acknowledgment they caused you damage?"

. . . .

Has anyone on the panel ever had anything, owned anything that was precious to them and somebody else broke it? . . . Anybody on the first row ever owned any property that was special to you and somebody else broke it?

. . . .

[S]omething really important to you.

. . . .

Did you have to work and spend a lot of time and effort to get what you thought was fair?

. . . .

[The following was asked after a potential juror stated that someone had crashed into his boat]. Did the guy that crashed into your boat start making excuses?

. . . .

Did they acknowledge the damage, or did they try to minimize the damage?

. . . .

How did it make you feel when the guy that crashed into your boat tried to minimize what he had really done to you?

. . . .

It wasn't fair was it?

. . . .

Has anyone had a situation like that like [the boat owner] has had where something that you had somebody else broke it and then they tried to minimize what they had done to you?

As the following demonstrates, the trial court's handling of the State's voir dire

5

contrasts sharply with its handling of Treeline's voir dire:

| | |
|---|---|
| *THE STATE:* | With regard to Tx.Dot I am going to tell you a little bit about the eminent domain process. What happens is Tx.Dot comes in and – |
| *THE COURT:* | Wait, wait. I want all three lawyers up here so we have an agreement on what we are going to do and not do. |

*(At the Bench)*

| | |
|---|---|
| *THE COURT:* | What is the point of this? I'm not sure. Once it hits this Court, it is no longer an administrative case. I am not sure how this is not going to be prejudicial. |
| *THE STATE:* | I was going to talk about whether anybody believes that the State lowballs, which I think is an appropriate question. |
| *THE COURT:* | If you do that, I am going to probably hold you in contempt of court. So you might want to write that down. |
| *THE STATE:* | Your Honor, just for the record, I am not allowed to ask – |
| *THE COURT:* | If you try to do that, I will hold you in contempt of court. |
| *THE STATE:* | Okay. |
| *THE COURT:* | That's my official ruling, or anything similar. Anything similar. You will have to use your noggin to figure out what that entails. |
| *THE STATE:* | Thank you, Your Honor. |

*(End of Bench discussion)*

We are unable to identify the trial court's reason for cutting off this line of questioning and threatening the State's attorney with contempt. The trial court could not have intended to prevent the State's attorney from mentioning the parties' failure to settle, because the court already had permitted Treeline's counsel to inform potential jurors of the impasse, as follows:

6

| *TREELINE*: | What if the parties, I mean, in this case, the parties were not able to come to an agreement?  The State did not want to pay what the landowner thought the damages were, and the landowner didn't want to accept what the State thought the compensation should be and that's why we have a panel here this morning, right? |
|---|---|

The trial court did not merely permit this commentary; it added to it, telling potential jurors, "It is not uncommon that the condemning authority and the landowner don't agree."  The trial court also did not intervene when Treeline's counsel quantified the disagreement for potential jurors:

| *TREELINE*: | The compensation due is $4.8 million.  You are going to hear evidence from the State that the compensation due is $2.3 million.  There's a gap between the parties of two-and-a-half million dollars. |
|---|---|

If the trial court had considered references to the parties' failure to settle to be a matter that justified holding an attorney in contempt, then it would have been Treeline's counsel that faced such a penalty.

In attempting to ask potential jurors whether they believe that the State "lowballs," the State's attorney properly inquired about whether the venire members held a preexisting bias or prejudice that the State underestimates property values.  *See* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 801 (3d ed. 1996) (defining "low-ball" as a verb meaning "to give an understated price, estimate, etc. to (someone), esp. without intending to honor it" or "to so understate (a price, etc.)").  This inquiry goes to whether the prospective jurors could impartially judge the credibility of the State's witnesses regarding value.  *See Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999) (explaining that a member of the venire may be challenged for cause if he cannot impartially judge credibility).[4]

---

[4] "As the statutory standards for bias or prejudice in civil and criminal cases are the same,

The clearest demonstration of the importance of this line of inquiry and the harm from its exclusion is found in the transcript of closing arguments. There Treeline's counsel told the jury that the State's appraiser used "low ball numbers."

In an attempt to distinguish its own attorney's use of this language, Treeline filed a post-submission brief in which it stated, "Treeline did not argue in closing about any 'lowball offers' by the State. Rather, Treeline argued in closing about the evidence of 'low ball' *market value numbers* to which the State's appraiser . . . testified." According to Treeline, there is a "critical distinction" between talking about "the State's offers that are a statutory prerequisite to commencing the administrative phase of a condemnation proceeding" and talking about evidence admitted at trial.

To make this argument, however, Treeline has altered both what its own counsel said and what the State's attorney said. Regarding Treeline's closing argument, Treeline's counsel did not say "low ball *market value numbers*"; he said that the State's appraiser "believes he has to go 17 to 18 miles away from this property to support the *low ball numbers* that he's offered for you to consider in this case." That is, the attorney argued that the State's appraiser was literally going out of his way to justify an underestimate of the property's value.

As for its characterization of the State's voir dire, Treeline says that "the trial court correctly precluded the State's counsel from asking voir dire questions concerning the State's 'lowball offers' where the State's question clearly related to the administrative phase of condemnation." But here, too, Treeline has altered the text. The State did not say "lowball *offers*"; it did not even use the word "lowball" as a modifier. It used the verb "lowballs." The State's attorney said she "was going to

---

voir dire standards should remain consistent." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 753 (Tex. 2006).

talk about whether anybody believes that the State lowballs," that is, whether the State underestimates a property's value. That is the same way in which Treeline's counsel used the expression.

Treeline asserts that the trial court did not abuse its discretion in cutting off this line of questioning because the venire panel already had been questioned about the government's right to take private property for public use; about fair market value and premium value; and about whether prospective jurors could follow the law and award "just compensation" for the taking. *Cf. Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87, 92 (Tex. 2005) (explaining that the trial court "may place reasonable limits on questioning that is duplicative or a waste of time"). Such questions, however, were part of a distinct inquiry. Those questions dealt with whether prospective jurors believed that a landowner would be entitled to greater-than-market value, either because the property had sentimental value or because the landowner was an unwilling seller. Such questions reveal prospective jurors' beliefs about what constitutes "just compensation." In contrast, a question about whether a potential juror believes that the State "lowballs" is intended to reveal whether the individual has a preconception that the State undervalues property. Because a belief that a landowner is entitled to nothing more or less than fair market value is independent of a belief that the State undervalues property, the two lines of inquiry are not duplicative: a single juror could believe both things, disbelieve both, or believe one and not the other.

In sum, the forbidden line of inquiry goes to whether potential jurors believed that the State's valuation of the property—which includes the evidence of valuation that the State would present at trial—is really the State's assessment of the property's fair market value or instead represents some lesser amount that the State believes that the property owner (or the jury) will accept. The State could not tailor the inquiry

9

more narrowly, because the trial court said that if the State 's counsel asked "anything similar" to such a question, then the trial court would hold the attorney in contempt of court. The trial court refused even to clarify what exactly the State's attorney could not ask. *Cf. Kiefer v. Cont'l Airlines, Inc.*, 10 S.W.3d 34, 41 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that the trial court did not prevent litigants from preserving error where the trial court prevented a juror from answering questions, but did not prevent counsel from asking questions). The trial court abused its discretion in barring the State from asking any proper question in this appropriate line of inquiry.

## B. The trial court's abuse of discretion was harmful.

Because the State was denied the opportunity to intelligently exercise its peremptory strikes and to discover whether any prospective juror was subject to a challenge for cause based on a preconception that the State undervalues property, we conclude that the State was denied the right to trial by a fair and impartial jury. This constitutes harmful error. *See Babcock*, 767 S.W.2d at 709.

In arguing to the contrary, Treeline states that the jury actually seated in this case did not include three panel members who believed the landowner was entitled to a premium, and did not include two panel members who mentioned negative experiences with the State or with condemning authorities. What Treeline cannot say, however, is that no one seated on the jury held a preexisting, prejudicial belief that the State undervalues property. That cannot now be determined, because the trial court did not permit that question, or "anything similar." It is therefore impossible to know whether, if this line of inquiry had been permitted, any additional jurors would have been challenged for cause or been removed from the panel through the State's use of a peremptory strike.

Treeline contends that the State "could have, but did not ask to further

question" three specific jurors, and "the State had the opportunity to bring additional venire members before the bench for further questions." The scope of this opportunity was as follows:

> *THE STATE:* Your Honor, just for the record, I am not allowed to ask –
>
> *THE COURT:* If you try to do that, I will hold you in contempt of court.

This is no opportunity at all.

We sustain this portion of the State's first issue.

### III. CONCLUSION

We conclude that the trial court abused its discretion and denied the State a fair trial before an impartial jury by preventing the State's counsel, on threat of contempt, from asking prospective jurors if they believed "the State lowballs," or asking "anything similar" to such a question. Without reaching the remaining issues, we reverse the trial court's judgment and remand the case for further proceedings.


/s/     Tracy Christopher
Justice


Panel consists of Justices Christopher, Brown, and Wise.

11